## MITCHELL HINSDILL *vs.* HARVEY MURRAY et al.

## In Chancery.

If one of two co-sureties receive property from the principal, to secure the joint liability, the other is entitled to the application of it in discharge of himself: and if the latter is compelled to pay the debt, he has a remedy in Chancery against the former for the fund in his hands.

And in such case, the court will follow the fund, for that purpose, in the hands of third persons, where it can be done without injury to them.

If the principal be in failing circumstances, and one surety receive property from him, which he gives the co-surety to understand is security for their joint liability, who relies upon the assurance, he will be responsible for the same to the co-surety, and is not at liberty, even with the assent of the principal, to apply it to a separate liability.

This was a Bill in Chancery, which alleged in substance, that on the 28th day of March, 1827, the orator signed a note of $1000 to the Bank of Burlington as surety for Allen and Warren Murray, and that Harvey Murray was also a surety.—That when said note became due, $250 was paid by said Allen Murray, and a new note given for $750, which was presented at the bank, and rejected, because it was not signed by Harvey Murray; and that the $1000 note was retained by the bank.—That about the 12th of July, 1827, the said Allen and Warren became embarrassed and unable to pay their debts; and for the purpose of indemnifying the orator and his co-surety upon the debt due the bank, the said Allen turned out and put into the hands of Harvey Murray the property mentioned in the bill, *to wit:* 700 sheep-skins, 500 pelts, and 1250 lbs. of wool; and that Harvey Murray so informed the orator on the 12th day of July, 1827.—That this property was attached by Jedediah Boynton and William Hurlbut on the 14th day of the same July.—That afterwards, Harvey Murray brought an *action* against Boynton, Hurlbut and the officer, and recovered $1106,60 damages for the property so turned out by said Allen to Harvey Murray, for the purpose of paying or secu-

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

ring the bank note aforesaid, on which the orator was holden. The orator alleges that the note of $1000 has been collected in a suit against the makers, and in discharge of that judgment, the orator has paid $538,99.

The bill prays a decree for the amount paid by the orator. Boynton and Hurlbut are made parties in order to have a decree against them for the amount; the judgment against them being temporarily enjoined, and Murray being alleged to be insolvent.

The answer admits that Allen and Warren were doing business together, but whether as partners, the defendant does not know.—That the orator signed the note for $1000 as surety for Allen and Warren Murray.—That $250 was paid, and a new note for $750 left in the bank, and the note of $1000 retained, because the new note was not signed by Harvey Murray.—That the note of $1000 has been collected, and that the orator has paid in discharge of that judgment $538,99.

The answer also admits the receipt of the property from Allen Murray.—That the skins, pelts and wool were attached by Boynton and Hurlbut,—That he instituted a suit against them, and that $1106,60 has been recovered, and proceeds as follows:

And this defendant further answering saith, That previous to the 2d day of October, A. D. 1826, this defendant had signed with Allen Murray, and as his surety, a note to Charles Russell, of Hinesburgh, for the sum of five hundred dollars, and one other note to Harry Bradley, of Williston, for the sum of three hundred dollars, on which a considerable interest had accrued, and which this defendant was then liable to pay; and this defendant further states, that on the 2d day of October, 1826, the said Allen Murray executed to this defendant, his note for twenty-six hundred dollars, expressing therein that it was for debts on which this defendant was holden for the said Allen Murray as surety; and this defendant says, that the said note was given solely as an indemnity to him against his liability upon the notes, which he had signed as surety as aforesaid, and to enable him to secure himself whenever it might be necessary.—That on or about the 12th day of July, A. D. 1827, this defendant learned that the said Allen Murray

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

was in failing circumstances, and in haste applied to Chauncey Brownell, Esq. of Williston, an attorney at law, for process to secure himself against his said liability, by attaching the said property and other property of the said Allen or Allen and Warren.—That at the time, and in the hurry and confusion of the moment, this defendant did not even think of the note he had before taken of the said Allen, and took from the said Brownell a writ for money paid, laid out and expended for the said Allen, and on or about the same day last aforesaid, by virtue thereof, caused the said property, together with a large amount of other property, to be attached and removed to the defendant's house in Williston ; and on the 14th day of July, A. D. 1827, this defendant being satisfied, upon reflection, that as he had in fact paid no money for the said Allen, but being only liable to pay, he could not hold the said property by virtue of said attachment, in order to secure himself in the premises, and to save unnecessary cost and expense, purchased the property named in the said writ of injunction, and by agreement with the said Allen, endorsed the same on said note, the sum of six hundred and twenty dollars and thirty-four cents ; and afterwards, on or about the 18th day of the same July, purchased of the said Allen two hundred and sixty sheep, which were also endorsed on the same note at $260 ; and for the said property so purchased and endorsed as aforesaid, this defendant recovered his said judgment and obtained his said execution.

And this defendant further answering saith, That the said property so received and endorsed as aforesaid, was received to indemnify this defendant against the liabilities contemplated in said note of $2600, and to enable him to discharge the same ; and in pursuance of such understanding, this defendant had long previous to this recovery of his said judgment, paid and caused to be paid to the said Morse, Russell and Bradley, on their said notes, a sum larger than the amount so endorsed on the $2600 note, and more than the value of the said property so endorsed as aforesaid, and did also discharge a lien upon the sheep existing previous to the purchase of the same as aforesaid, amounting to about $45 ; and this defendant most positively and unequivocally denies that the property so endorsed

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

as aforesaid, or any part thereof, was turned out and delivered by the said Allen, or received by the defendant, for the sole purpose of paying the said bank debt, or for any other purpose but to indemnify this defendant against, and to enable him to discharge his own liability; and this defendant having received the said property, and applied it as aforesaid, considered himself *legally* and *morally* at liberty to discharge in the first instance those debts where he was the sole surety of the said Allen.

And this defendant further answering saith, That at some time in a conversation with the said Hinsdill, this defendant mentioned the bank note among his liabilities for the said Allen; but this defendant denies absolutely that he did, on the said 12th day of July, or at any other time, inform the said Hinsdill that he had received the said property to pay the said bank note, or that he had undertaken to pay the same by means of the said property, or in any other way, or that he the said Hinsdill need not give himself any further trouble about the same, or that he ever gave the said Hinsdill any reason to believe or infer any such fact.

And this defendant further answering saith, That after the delivery of the the said property to this defendant, by the said Allen, and the attachment of their other property by the said Boynton and Hurlbut, on the said 14th day of July, 1827, the said Allen and Warren had no means, known to this defendant, of securing or indemnifying the said Hinsdill against the payment of the said bank note.

And this defendant further answering saith, That all the property of the said Allen attached by this defendant, and not purchased and endorsed as aforesaid, was attached and holden by the said Boynton and Hurlbut, and sold on their judgment against the said Allen and Warren, and that this defendant was afterwards sued for taking the same property by Burdick and Hurlbut, and that they have recovered a final judgment against him therefor, as nearly as this defendant can now recollect, for more than two hundred dollars.

In support of his bill, the orator produced the evidence of *Ira E. Sperry,* who testified, that early on the morning of the same day in which Harvey Murray attached Allen

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

and Warren Murray's property, Warren and Harvey Murray, with the officer, called the witness to accompany them to Burdick and Hurlbut's tannery.—That on arriving at the tannery, W. Murray said, in the hearing of Harvey, that the property at the mill, or pelt-shop, was turned out to secure the debt to the bank, on which M. Hinsdill and H. Murray were holden.—That while they were moving the property, Samuel Hurlbut inquired of Harvey Murray why he attached so much?—Murray replied, that the property at the mill, or pelt-shop, was turned out to secure the bank debt on which he and Hinsdill were holden, and that he was attaching the property at the tannery to secure his private debt against Allen Murray.

*Samuel Hurlbut's* testimony was the same in substance.

*Ira Burdick* testified, that Harvey Murray told him, the morning said Murray attached, as aforesaid, that the property at the pelt-shop was turned out particularly to secure the debt due the bank, on which M. Hinsdill and H. Murray were holden.—Burdick also says, that Allen Murray told him the same on the same day at Williston.

*William Hurlbut* testified that he went to Williston the same day the property was attached by H. Murray, and first saw Allen Murray, who told the witness that the skins, wool and pelts were turned out to Harvey to secure Harvey and Hinsdill on the bank debt, and that Harvey would not deny it.—That Allen dictated a letter to Harvey, which witness carried to him, and that Harvey admitted the facts above mentioned, *and that he so told Hinsdill that morning;* but had given no writing, and would not now be bound by it.

Copy of the letter referred to, dated

" WILLISTON, July 14th, 1827.

" BROTHER HARVEY,—I have said to Mr. Hurlbut it is my wish and expectation that the property attached by you, of mine, go to pay the bank note of $750. And it is my wish and desire that you satisfy Hinsdill either by putting the property into his hands, or indemnifying him from said note if possible.          ALLEN MURRAY."

*Jedediah Boynton* testified, that Allen and Warren Murray were partners in what they called "the pelting business," on and before the 14th day of July, 1827. On the

CHITTENDEN,
*January*,
1834.

Hinsdill
*vs.*
Murray et al.

12th day of July, 1827, and in the morning, I heard that Harvey Murray had attached the property of Allen and Warren Murray, consisting of sheeps' pelts, wool, and part-tanned skins. Mr. Hurlbut and myself went and saw Allen and Warren Murray, and they told us that the bank note of $1000, which was signed by A. & W. Murray, as principals, and Harvey Murray and Mitchell Hinsdill, as sureties, was for the benefit of Allen and Warren Murray alone.—That $250 had been paid by said Allen and Warren Murray on said note. We first conversed with Allen Murray, and he told us that the property of Allen and Warren Murray was turned out to indemnify Harvey Murray and Mitchell Hinsdill for signing the aforesaid bank note. We afterwards called on Harvey Murray, and he stated to us the same. As Mitchell Hinsdill was then out of the country on our business, we, as his friends, wished to make some arrangement for his security, and accordingly proposed to Harvey Murray to take the property of Allen and Warren Murray, and dispose of it to the best advantage for the benefit of said Hinsdill and Harvey Murray.—Said Harvey Murray consented to the proposition, provided we would give him an indemnity against the bank note.—We did not see fit to do this, and did not receive the property. In conversation with Allen Murray and Harvey Murray, I understood from them each that Harvey Murray attached the property of Allen and Warren Murray, to secure it for the benefit of said Harvey Murray and Mitchell Hinsdill; and at the same time I heard that Allen Murray had executed a deed to Harvey Murray of certain land, and had also conveyed to him other personal property to secure said Harvey Murray for other liabilities which he the said Harvey Murray was under for Allen and Warren Murray. Afterwards, on the 14th day of July, 1827, Boynton and Hurlbut attached the property of Allen and Warren Murray, on three attachments, one in favor of Jedediah Boynton, and one in favor of William Hurlbut, and then ascertained the amount of the same, which was as follows:—700 sheepskins, 500 pelts, and 1250 lbs. of wool, and about 300 half-tanned skins. We afterwards got judgment against the said Allen and Warren Murray, and the said property was disposed of to pay said judgment. Afterwards, Har-

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

vey Murray commenced a suit against us, and the officer who attached the said property, for taking the same, and recovered judgment against us for the same for $1106,60 damages, which we have paid. A suit was commenced by the bank against said Hinsdill and the Murrays on the bank note—judgment obtained, and said Hinsdill paid towards said judgment $538,99. The suits which were brought by us in the name of Jedediah Boynton and in favor of William Hurlbut against Allen and Warren Murray, on which their property was attached, as before mentioned, were brought for our benefit, and not for the benefit of Mitchell Hinsdill, to hold the property for our own use.

*Asa Hall* testified, that on the day the property was attached by Boynton and Hurlbut (July 14th) he was in company with Harvey Murray.—Murray told the witness that the skins, pelts and wool were turned out to him by Allen Murray the night before the attachment to secure the note to the bank, which was signed by H. Murray and M. Hinsdill. He then mentioned other property which was turned out to secure other debts, viz. to Charles Russel and Morse & Bradley; and a short time afterwards, Allen Murray told the witness the same story.

*Isaac Sherwood* testified, that soon after the attachment by Harvey Murray, Allen Murray told the witness, that the property at the pelt-shop (skins, pelts and wool) was turned out to Harvey, to secure Harvey and Hinsdill against the bank debt.

On the part of the defendant, the deposition of Allen Murray was introduced, who testified to direct interrogatories, that in July, 1827, and previous, and on the 12th of that month, defendant was indebted to Harvey Murray in the sum of more than two thousand dollars, on a promissory note, executed to him by defendant.—That defendant did, on or about the 12th of July, 1827, turn out and deliver to said Harvey certain property at Williston, for the purpose of being applied on the said note, which was rising of two thousand dollars, and may have amounted to two thousand six hundred dollars, which note was then held by said Harvey. The said property consisted of a quantity of wool, sheep-skins and pelts, and certain sheep,

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

and was then worth in money about twelve hundred dollars. The said wool and skins had been previously attached and taken by said Harvey for the purpose of providing the means of paying the said Harvey what deponent owed him. Deponent says, there was no agreement between him and said Harvey, nor any understanding whatever, that said Harvey should appropriate any part of the avails of the said property to paying a note payable to the Bank of Burlington, and signed by said Harvey and said complainant and deponent, or any other note whatever payable to said bank ; but the said property was turned out solely to be applied on the aforesaid note of rising of two thousand dollars.

Upon his examination upon cross-interrogatories on the part of the complainant, he deposed, That he was indebted to the said Harvey, as mentioned in his direct answers, on the uote mentioned therein, which was given to said Harvey for the purpose of securing him as surety for this deponent on certain other notes to different persons, viz : to Selah Murray, about eight hundred dollars—to Calvin Morse, about five hundred and sixty dollars—to Charles Russell, about five hundred dollars—to Harry and John Bradley, about three hundred dollars ; and there might be some others which deponent does not recollect,–all of which moneys were afterwards paid by said Harvey, as deponent believes. And the said Harvey held no other security but the said note.

That he executed the said note of two thousand dollars and rising at the house of said Harvey in Williston. Beriah Murray was the only person present besides the deponent and said Harvey ; and the object in giving the note was to secure the said Harvey as before mentioned.

That at the time he turned out the property, as mentioned in his answer to the direct interrogatories, deponent was a partner with Warren Murray, and the wool, skins and pelts, part of said property, was partnership property.

That the said property was turned out on the premises of the said Harvey in Williston aforesaid. Hiram Phelps and Alonzo Murray were present. After the property was turned out, I ordered it to be endorsed on said note, and I did not see it endorsed, but am informed and believe it was so endorsed at or about that time by Brigham Wright.

CHITTENDN,
January,
1834.

Hinsdill
vs.
Murray et al.

That when the property was turned out as aforesaid, deponent did not know of any attachments against the same, except the said Harvey's attachment; and whether attachments were about being issued or not by deponent's other creditors, he cannot tell; and the said property was turned out to secure the said Harvey as aforesaid, and not with a view of avoiding the claims of other creditors.

That when said property was turned out, as aforesaid, he did not agree with said Harvey that the bank note which the complainant had signed for deponent should be paid: nor was said property held under any such agreement by said Harvey; and I have never so stated, or informed the said complainant.

*Warren Murray* testified, that on the 12th day of July, 1827, he was present at the pelt-shop of Murray and Patrick, when Harvey Murray attached a quantity of wool, pelts and skins, as the property of Allen Murray. Allen Murray was not there at the time, and was not there for three or four days previous. Two or three days after the above attachment, I was at my brother Harvey's in Williston, and Boynton and Hurlbut, and I believe Mr. Hinsdill, with an officer, (Mr. Sanford) were there, and were attaching and removing the same property above attached on a suit against Allen Murray, as I understood, but in whose favor I do not know.

Upon cross-examination, witness testified that the property attached was Allen Murray's.—That the attachment of Harvey Murray was made between day-light and sunrise.—That the day previous, Allen told him that Boynton and Hurlbut were determined to break him up, and he would not stay to see it.—That the money obtained of the bank was for Allen's benefit.—That he and Hinsdill signed the note at Allen's request.—That witness and Harvey Murray, on the morning of the attachment, had a conversation, in which witness expressed the wish that the property attached should go for the benefit of Hinsdill, to which Harvey replied that he was holden for Allen, and should take care of himself first; and that the attachment was against A. & W. Murray.

*John Wells* testified, that he was called up in the night of the attachment of Harvey Murray against Allen Murray

of the property at the pelt-shop, by Beriah Murray, who requested me to get up my team and go to Hinesburgh to remove the property attached. I went accordingly—got there about day-light—took a load, and brought it to Williston. I did not see Allen Murray at Hinesburgh that day. I was at Harvey Murray's when Boynton and Hurlbut were there attaching the same goods. I did not see Allen Murray there.

*Hiram Phelps* testified, that on the morning of the attachment by Boynton and Hurlbut of the property of Allen Murray, at Harvey Murray's, I was called on by Harvey Murray to go to his house to witness the turning out of Allen Murray's property to Harvey Murray : I went there accordingly, and defendant was present, when Allen Murray turned out to Harvey Murray a quantity of pelts, skins and wool, to be applied on a note of twenty-five or twenty-six hundred dollars, which Harvey held against Allen. I did not see it endorsed on the note, but it was agreed between them that it should be. The prices of the property were agreed upon also. This was early in the morning, about sun-rise, and previous to the attachment of Boynton and Hurlbut.

The opinion of the court was pronounced by

PHELPS, J.—This bill alleges, in substance, that the orator and the respondent, Harvey Murray, were co-sureties for Allen and Warren Murray, at the Burlington Bank.— That A. and W. Murray, being in failing circumstances, on the 12th of July, 1827, assigned to the respondent, H. Murray, certain personal property for the joint benefit of Harvey and the orator, to secure them from their liability at the bank.—That the property was subsequently attached by Boynton and Hurlbut, who were also creditors of A. & W. Murray. For this taking, Harvey brought his action of trespass, and secured a sum sufficient to indemnify himself and the orator against the bank note.—That the orator has since been compelled to pay of that note the sum of $538,99 ; and the bill prays, that the respondent, Murray, be decreed to reimburse the orator out of the sum pledged. It further states, that the respondent, Murray, is insolvent, and that the judgment against the other respondents is

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

19

CHITTENDEN, unpaid; and Boynton and Hurlbut are made parties, and
January,
1834.       a temporary injunction against the payment of the judg-
_____  ment to Murray has been had, with a view to obtaining a
Hinsdill    decree for the payment of the same directly to the orator.
vs.
Murray et al.     The controversy between the parties originates in the
denial, by the respondent, that the property was received
upon the terms stated. He insists, that it was assigned to
indemnify him for certain several liabilities for A. & W.
Murray, and not as a provision for the bank debt. He
endeavors to make title to it, first by virtue of an attach-
ment by him on the same 12th of July, 1827, under
color of which he took possession of it; and, secondly, by
a subsequent sale and purchase, on the 14th of July, and
the application of it to extinguish certain separate liabili-
ties of his for Allen Murray.

With respect to the attachment, it appears to have been
made, in an action for money paid, grounded on certain
liabilities as surety, which had not been discharged, and
of course was premature.

The subsequent sale took place after the goods had been
removed from Hinesburgh to Williston, the defendants'
place of residence; and in that arrangement, it appears,
that the estimated value of the property was, by agreement
between Allen Murray and the respondent, endorsed on a
certain note from Allen to respondent, for the sum of
$2600, which purports to have been executed on the 2d of
October, 1826. This note is conceded to have been given
merely as a means of obtaining security for outstanding lia-
bilities, and to have no other consideration. Of the exis-
tence of such note, previous to the 14th of July, 1827, we
have however no satisfactory evidence; and in the absence
of such evidence the presumption is, under the circumstan-
ces of the case, that it was fabricated for that occasion.

The first question presented by the case, is the question
of fact, whether the property in controversy was received
by the respondent, either as security against the liability
at the bank, or, as the means of discharging that debt.—
On this point, we have, on the part of the plaintiff, the tes-
timony of Asa Hall, J. Boynton, W. Hurlbut, Ira Burdick,
Samuel Hurlbut, and Ira E. Sperry, six witnesses, all (with
possibly one exception) unimpeached, and as we are bound

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

to believe, unimpeachable—whose testimony to the positive declarations of the respondent of the truth of the allegation in the bill, is explicit, direct, and unequivocal.

On the other hand, we have the respondent's answer, and the testimony of Allen Murray; (for the other testimony for the respondent has so little bearing on this point, that I lay it out of the case.)

Giving to this last testimony all the weight which is claimed for it, the preponderance of evidence is numerically against it. Still it must be admitted, that the weight of evidence is not always to be determined by this criterion. Let us therefore examine this answer:

In the first place, the denial in the answer, if it be understood as a direct denial of the allegation in the bill, is directly and irreconcilably at war with the respondent's own declarations to the six several witnesses mentioned above—declarations so often repeated, at various times and places, and vouched by the testimony of so many separate witnesses, all harmonizing with each other, that there is scarce a possibility left, of misapprehension of his meaning, or of intentional imposition on the part of the witness.

In the next place, there is something extremely suspicious in that part of the answer relating to the attachment by him, and the note for $2600. He alleges that note to have been executed on the 2d of October, 1826, yet in July following, he made the attachment in a form in which he was aware, as he says, upon reflection, it could not be supported. It is probable also, that he was so advised by his counsel. Why then was not that note made use of, as the basis of an attachment which could be made effectual, instead of bringing an action for money paid, which he knew could not be sustained? The pretence that the note was forgotten, on such an occasion, in an affair of this magnitude, and when his attention was called to the necessity of some such available security, is hardly credible.

There is also another view in which this answer may be regarded, and which may serve to reconcile the testimony.

The transaction at Hinesburgh, at the time of the attachment, and that at Williston afterwards, may be kept distinct. The answer proceeds to state the agreement at Williston, when the amount of the property was endorsed

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.
on the note, and then follows the denial of the fact in controversy. Now if we consider the denial as having reference to that part of the transaction alone, (of which construction the phraseology of the answer admits) the evidence is readily reconciled, upon the supposition, that, although the original understanding was such as the plaintiff insists, yet upon the consummation of the business at Williston, it was otherwise. Upon this interpretation the answer evades the merits of the case.

There is still another way in which the evidence may be reconciled. The answer denies that the property was secured by the respondent, for the benefit of the orator jointly with himself. Admit this to be true. The testimony of the several witnesses mentioned above, proves, that the respondent declared repeatedly at the time, that the orator was to be benefitted by the security. Take this also for truth; and what is the result? That the respondent practised an intentional deceit. The only assignable motive for this is to be learnt from the testimony of W. Hurlbut, who was acting in behalf of the orator in his temporary absence, and seeking security for him. It was doubtless to induce the orator and his agent to rest satisfied, upon the supposition that he was already secure, until the respondent could appropriate the whole property to himself.

Having thus ascertained the various results to which we may arrive upon the answer, let us examine the testimony of Allen Murray, which professes to sustain it. In his direct testimony, he states the note for $2600, to be an absolute debt. He takes no notice of its having referred to other liabilities, or of its being intended to secure any contingent liability. The answer alleges, that the note "was given solely as an indemnity," &c. And the note itself, which is produced, purports, on the face of it, to be given " for debts for which he (H. M.) is holden for me."

In his answers to the cross interrogatories, the witness admits that the note was given as an indemnity, and he then attempts to state the various liabilities as follows:

To Selah Murray a note for about $800
" Calvin Morse, . . . . 500
" C. Russell, . . . . . 500
" H. & S. Bradley, . . . 300.—$2100.00.
And he says there might be some others.

CHITTENDEN
January,
1834.

Hinsdill
vs.
Murray et al.

The respondent in his answer states only the debts due to Russel & Bradley, amounnting together to $800, although he alludes to a payment to Morse.

The deponent also denies that the property was assigned for the purpose of securing the bank debt; but his deposition is liable to the same explanation as is given to the answer, viz: that deponent refers to the *final* contract at Williston. His answer to our interrogatory is, " *That when said property was turned out as aforesaid*, (i. e. at Williston) *he did not agree*," &c. It is somewhat singular, that neither the respondent nor the witness should have adverted to the distinction between the understanding at Hinesburgh and the after agreement at Williston, and it is strange, (if their consciences would permit them to do it,) that they did not negative the supposed *original* understanding.

This may appear to be refining upon phraseology; but where testimony is apparently conflicting, it is necessary to scrutinize it closely, and attend to its precise import; more especially where the testimony of the witness, as in this case, is inconsistent with his statements elsewhere. It is sworn by Hall, Boynton, Hurlbut, and Burdick, that Allen Murray, the deponent, stated to them, that the property in question was turned out to them to secure the bank debt; and it is remarkable that three of these witnesses fix this declaration of the witness on the 12th day of July, the transaction at Williston having taken place on the 14th. If there be any reliance upon this testimony, the only explanation that can be given to that of A. Murray is, that he refers to the contract at Williston alone. Boynton says, that he understood, from both the respondent and Allen, " that Harvey attached the property, to secure it for the benefit of said Harvey Murray and Mitchell Hinsdill;" and this on the 12th of July. William Hurlbut's testimony is to the same purport. Besides, we have a letter addressed by Allen to Harvey, dated the 12th of July 1827, in which he states, " it is my wish and expectation, that the property attached by you should go to pay the bank note of $750," &c. It is then placed beyond a question, either that the witness' testimony is to be taken as restricted to the agreement at Williston, or he has stated an untruth.

CHITTENDEN,
January,
1834.

Hinsdill
vs.
Murray et al.

The result of this examination of the evidence in the case is most obviously this. Either the property was originally placed in the hands of the respondent, for the benefit of the orator as well as himself, or he deceived the orator and his agents with that pretence, until he had placed the property beyond their reach and secured it himself.

It is not important, to the decision of the cause, which supposition we adopt. Upon the first, it certainly was not competent for the respondent, after Hinsdill or his agents had been advised of the proceeding, and had, relying on the security, omitted to take other security, to alter the destination of the property, even with the consent of the principal. No rule of law is better settled than this, that if one of two co-sureties take a pledge from the principal, or receive property from him, as a means of indemnity against the joint liability, the other is entitled to the benefit of it, so far as respects an application of it to the debt; and if the latter is compelled to pay the debt, he is entitled to the fund. This results from his right to an indemnity as respects his principal, and the principle of contribution as regards the co-surety. If we adopt the other supposition, the question is reduced to this, Will this court countenance falsehood, deception and bad faith, in business transactions, or lend their aid to consummate a most palpable fraud? It is very obvious that, had Hinsdill not been deceived, he might have obtained security on the property in question. The defendant's suit was premature and might have been defeated; and nothing further was necessary than to attach the property for the benefit of Hinsdill and defend the first suit. He might perhaps have obtained other security; but he was diverted by pretences of the defendants which he now asserts to be false. We cannot prevent the party from alledging his own turpitude, if he choose so to do, but we can prevent him from protecting himself by his own fraud, or turning his turpitude to advantage.

The orator is, without question, entitled to indemnity out of the fund, as against the respondent Murray. As to the other respondents, it is a matter of no interest what is the issue of the case. Payment of the judgment against

them having been suspended to await this determination, it is immaterial to them, to whom they pay the money. If the orator is entitled to the money as against Murray, and if he be insolvent, the court will not hesitate to follow the funds in the hands of third persons, if it can be done without injury to them.

The decree will be, that the respondents, Boynton and Hurlbut, pay to the orator the amount due him on account of the bank note, with the costs of this suit, and the balance of the judgment, if any, to Murray; and upon such payment that Murray be perpetually enjoined, &c.