Seibert and Lykins v. Thompson.

| 8 | 65 |
| 44 | 297 |

SEIBERT AND LYKINS v. EDWARD D. THOMPSON, *et al.*

1. EQUITY JURISDICTION; *Parties; subject-matter.* Where a court of equity has all the parties before it, it will adjudicate upon all the rights of the parties connected with the subject-matter of the action, so as to avoid a multiplicity of suits.

2. SURETIES; *Securities taken by one Co-surety inure to the benefit of all.* It is a settled principle of equity that if one of several co-sureties subsequently take a security from the principal for his own indemnity it inures to the common benefit of all the sureties.

3. ———— A. and L. gave their promissory note to T. for money loaned by T. to E. By a subsequent arrangement between E., D. and A., D. conveyed a certain lot in payment of said note, and also in payment of a debt of his own to A., and A. was to pay T. the amount of said note. Afterwards, A. assigned said lot, for the benefit of his creditors generally, to S.: *Held*—1st, That L., as a co-surety with A. of the debt evidenced by said note, has a right to have said lot sold and the proceeds applied in payment of said note; and 2d, That T., the principal creditor, has, if he chooses, the right, under and through L., to have the said lot sold and the proceeds applied in payment of said note.

*Error from Douglas District Court.*

THE ACTION below was commenced by *Edward D. Thompson* against *Reuben W. Ludington* and *Wm. H. R. Lykins* on a promissory note given by said Ludington and Lykins to said *Thompson.* The petition was in the ordinary form in such cases. *Ludington* answered, setting forth among other things that the note was given for money loaned by the said *Thompson* to Shaler W. Eldridge; that by an agreement made subsequently between Eldridge and George W. Deitzler, Deitzler agreed to pay the note; that afterwards Deitzler conveyed to *Lykins* the south half of Lot No. 24 on Massachusetts street, in the city of Lawrence, in full payment of said note; that afterwards *Lykins* conveyed by a certain deed of assignment said lot to *Geo. W. Seibert.* And *Ludington* then asked that said *Thompson* be required to make said *Deitzler* and said *Seibert* parties to said action, and that said lot be applied in payment of said note. Upon the filing of said answer *Thompson* amended his petition and made said *Seibert* a party defendant; and he set forth in his amended petition substantially the same facts as had been stated in the answer of said *Ludington,* and also asked that said lot be ordered to be sold and the proceeds applied to the payment of said note. Lykins did not answer at all. *Seibert* answered, setting up two defenses. The first defense was a general denial of the allegations of the plaintiff's petition, except that he admitted the execution of the said deed of assignment for the benefit of Lykins' creditors, and also admitted the execution of said note; the second defense stated "that the petition did not state facts sufficient to constitute a cause of action against him," thus raising an issue at law. There was a trial of the issues of fact, but the issue of law was not presented to or considered by the district court. The case was tried before the court, and the court found the facts substantially as stated in the answer of *Ludington* and the amended petition of *Thompson,* and rendered judgment accordingly, decreeing that said lot be sold and the proceeds be applied in payment of said note. To this

decree *Seibert* and *Lykins* excepted, and now seek to have it reversed by the judgment of this court.

*Thacher & Banks*, for plaintiffs in error:

1. The note on which the suit is brought was never surrendered, and Thompson was not a party to the transactions between Deitzler and Lykins, as shown by the fact that he remained and was the legal owner and holder of the note at the time the suit was brought.

We submit that from the facts as found and admitted Thompson has no lien or right in or to the lot in question. Neither Ludington nor Lykins was relieved from responsibility on the ,note, and each of them remains good to Thompson; and there is no allegation in the petition that said parties or either of them is insolvent, or that the property which Seibert holds as assignee of Lykins is insufficient to pay Lykins' debts. 18 Ohio, 35; 2 Barb. Ch., 576.

It is clear that there was no " mortgage " in the case from Deitzler to the plaintiff on the lot in question. It is not claimed that there was any privity whatever between the plaintiff and Deitzler. Lykins took the deed of the lot in payment of debts due him from Deitzler as well as in payment of Deitzler's obligation to pay for Eldridge the sum of money mentioned in the note of Ludington and Lykins to Thompson, and for which Eldridge was liable to Ludington and Lykins. In other words, Lykins collects from Deitzler, for Eldridge's benefit, in advance, the amount that Eldridge would be compelled to pay him on his paying to Thompson the amount due on the note.

But this arrangement between the makers of the note and the parties who were finally to make them good, raises no equity whatever as to the property with which the indemnity or payment is made to Lykins and the holder of the note. Thompson parts with nothing nor gains anything in the transaction between Lykins and Deitzler — in fact he is not privy to it — he still holds his claim against the makers of the note

and they still remain liable to him. Certainly before judgment, with no allegation of insolvency or bankruptcy of makers of the note, the note being still a valid and subsisting instrument and obligation, there is nothing in equity proceedings or in the law of trusts that can sustain the finding of law made by the court, nor the decree entered by it.

2. As to a trust, it is clearly defined by statute and by authority. It only arises in those instances where the fund of the beneficiary is used in making the purchases.

This subject, so far as the statute relates to the matter, is disposed of in § 8, Ch. 114, Gen. Stat. 1868. And this enactment is but a legislative statement of the law as it existed before both by statute and common law. 14 Ill., 501.

The courts of Kansas have not favored any of these secret or resulting trusts. " In so far as real estate is concerned, directly or indirectly, nothing is to be permitted to rest in parol." 3 Kas., 184.

3. Even were we to call this conveyance from Deitzler to Lykins—this interest in the lot which Lykins estimated as part of the purchase money at $1,170—were we to call this cash belonging to the plaintiff, it would still not constitute a general lien upon the property. It was not a purchase of an aliquot part of the property, and hence gave no ownership in the property. It must be a payment for some distinct or specific part of the whole property, to raise a resulting trust by implication of law. 14 Gray, 119; 15 Wend., 650; 13 Ill., 227; 47 id., 282; 3 Sumner, 463, 466.

To sustain or make a resulting trust Thompson must have been in a position at the time of the purchase by Lykins of Deitzler of the property to have been in equity entitled to the deed. 13 Ill., 227.

*Riggs, Nevison & Foote,* for defendants in error:

The findings of the court below clearly show such facts as in law create a resulting trust in favor of Thompson. 2 Johns. Ch., 405; 1 Atkins, 59; 2 Ves. & R., 388; Har. Ch., 130; 3 A. K. Marsh, 472.

The opinion of the court was delivered by

VALENTINE, J.: This case has been very ably managed in this court on the part of the plaintiffs in error. But notwithstanding the skill and ingenuity of the learned counsel who managed it, we are unable to perceive any error sufficient to reverse the judgment of the court below. It is claimed that the petition below was not sufficient because it did not state that either Ludington or Lykins were insolvent, or that the property which Seibert held as assignee of Lykins was not sufficient to pay all of Lykins' debts. This question was not raised in the court below, and therefore it is very questionable whether it can be raised here. But suppose the question can be raised here: then, is the petition defective? Thompson's right to have the lot applied in payment of said note is not a right that results to him originally. The right results first to Ludington, the co-surety, and through Ludington to Thompson, the creditor; and it was Ludington who first applied in this case to have said lot used in payment of said debt. Now, before Ludington can have this lot so used, must he show that he is himself insolvent? or, before this right of his is transferred to Thompson, must it be shown that Ludington is insolvent? We think not.

If it were necessary to show that Lykins was insolvent, or that the property which Seibert held as assignee of Lykins was not sufficient to pay all of Lykins' debts, then we think it was sufficiently shown. If such was not the case, if Lykins was not insolvent, then he had no right to assign his property to Seibert for the benefit of his creditors, and such assignment would be void being made for the purpose of hindering, delaying, and defrauding such creditors. (Comp. Laws, 568, § 2; Gen. Stat., 504, § 2; 1 Sanf. Ch., 4, 9; 3 Barb. Ch., 644, 646; 15 Barb., 56, 57, 560, 563; 18 Barb., 272, 275, 612, 614; *Burt v. McKinstry*, 4 Minn., 204.)

It must be remembered that in equity Shaler W. Eldridge was the principal debtor in this transaction, and that Ludington and Lykins were only sureties, though Eldridge was not a

party to said note. And it must also be remembered that although this action was commenced originally as an action at law, it was afterwards on the request of Ludington converted into a suit in equity. It is a principle of equity that where the court has all the parties before it, it will adjudicate upon all the rights of the parties connected with the subject-matter of the suit so far as it can, so as to avoid a multiplicity of suits. It was proper that the court should in this suit adjudicate upon the rights of Ludington, and not compel him to first pay the debt to Thompson and then sue Lykins and Seibert for contribution. That Ludington's right in equity to have this property applied in payment of this debt, we think is clear beyond all doubt. We copy the following from a note appended to the case of *Deering v. Earl of Winchelsea*, 1 Lead. Cas. in Eq., 162, 163, 164: " It is a settled principle of equity that if one of several co-sureties subsequently take a security from the principal for his own indemnity it inures to the common benefit of all the sureties; if therefore the principal convey property by deed of trust, expressly for the benefit of one of the sureties only, the others have an equity to come upon it to the same extent that he can. *Welch v. Belcher*, 5 Munford, 187; *McMahon v. Fawcett*, 2 Rand., 514; *Fagan v. Jacobs*, 4 Dev. 263; *Gregory v. Murrell*, 2 Ire. Eq., 233, 236; *Field v. Pelat*, 1 McMul. Eq., 370; *Hinsdell v. Murrary*, 6 Vt., 136, 150; *Elwood v. Deifendorf*, 5 Barb., 399, 405; *Rice v. Morton*, 19 Mo., 263; *Steele v. Mealing*, 24 Ala., 285; *Tyus v. De Jarnette*, 26 id., 280. " Sureties," said Kennedy, J., " are bound to observe good faith toward each other; and when funds are placed by the principal in the hands of one surety to be applied either to the payment of the debt or for the purpose of indemnifying him against any loss that may arise from the suretyship, he must be considered as holding them for the common benefit of all concerned. The giving of the funds was the act of the principal who was equally bound to indemnify all his sureties alike; and upon him, as well as to all his means for that purpose, each of them had an equal and just

*1. Equity powers of Court; multiplicity of suits.*

*2. Co-sureties, application of securities.*

claim.   It is unjust and inequitable that one surety without the consent of his co-sureties should derive any exclusive benefit from the act of the principal in giving up what he might and ought to have applied for the common benefit at all." *Agnew v. Boll* 4 Watts, 31, 33.   Where "one surety stipulates for a separate indemnity," says Henderson, J., in *Moore v. Moore,* 4 Hawks, 358, 360, "such indemnity is reached in favor of his co-surety, upon the ground either that it was intended for the benefit of all, or that the taking it was a fraud upon the others.   In such cases courts of equity convert him into a trustee, not permitting him to allege his own turpitude or selfishness as a protection, for they enter into the agreement under a belief of perfect equality, trusting apparently to the same laws of indemnity, and to the united exertions of each other to avoid harm severally; therefore for one to take a separate indemnity is a fraud upon the rest, and more especially as it lessens the ability of the principal to indemnify the others; and if taken without such secrecy, it is presumed to be designed for the benefit of all."   See also *Hall v. Robinson,* 8 Ire., 56.   "The surety receiving securities is a trustee for his co-sureties, and is bound to such discreet and reasonable use of them as would be required from a trustee, but no greater." *Carpenter v. Kelly,* 9 Ohio, 106.   See *Pool v. Williams,* 8 Iredell, 286.

"In like manner the principal creditor is in equity entitled to the full benefit of any security given by the debtor to a surety for his indemnity and for the discharge of the debt; and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence." *Maure v. Harrison,* 1 Eq. Cas. Abr., 93, pt. 5; *Wright v. Morley,* 11 Vesey, 12, 22; *Moses v. Murgatoyd,* 1 Johns. Ch., 119, 129; *Phillips v. Thompson,* 2 id., 418, 422; *Pratt v. Adams,* 7 Paige, 617, 627; *Curtis v. Tyler,* 9 id., 432, 435; *Ten Eyck v. Holmes,* 3 Sanf., 428; *Roberts v. Calvin,* 3 Grat., 359, 363; *Toulmin v. Hamilton,* 7 Ala., 362, 367; *Ohio Life Ins. Co. v. Ledyard,* 8 id., 866, 872; *Paris v. Hulet,*

*3. And creditor is also entitled to benefit of securities.*

26 Vt., 308; *Riddle v. Bowman.*, 7 Foster, 236; *Haven v. Foley*, 19 Mo., 632; *Aldrich v. Martin*, 4 R. I., 520.   In fact a court of equity under the title of subrogation exercises a paramount control, for purposes of justice and convenience, in respect to the relation of principal and sureties.   " If property is pledged to either the creditor or a surety, though not to the person seeking to charge it, it may be reached by substitution in a court of equity, without regard to the intention of the contracting parties;" per Parker, J., in *Hopewell v. Bank of Cumberland*, 10 Leigh, 206, 226.   See also *McCollom v. Hinckley*, 9 Vt., 143, 149.   "This," says Parker, J., (p. 221,) " arises not from any notion of mutual contract between the parties, that in providing for the surety the creditor shall be equally provided for, but from a principle of natural equity, independent of contract, namely, that to prevent the surety from being first harrassed for the debt or liability, and then turning him round to seek redress from a collateral security given by the principal, a court of equity will authorize and even encourage the creditor to claim, *through the medium of the surety*, all the rights he has thus acquired, to be exercised for his benefit and in discharge of his obligations.   This equity of the creditors rests upon the doctrine of subrogation or substitution; and therefore the creditor cannot claim the security unless the surety had a right to come upon it. *Bibb v. Martin* 14 S. & M., 87. *Bush v. Schup*, 4 Cushman, 463." See also upon this same subject, 1 Story Eq. Jur., §§ 499 to 502; Com. Dig., Chancery 4, *D.* 6; *New Bedford Savings Inst. v. Fair Haven Bank*, 9 Allen, 175; *Eastman v. Foster*, 8 Metc., (Mass.) 19.

Now, in the light of reason and authority we are unable to see why a court of equity should postpone Ludington's rights, and require him to set them up in another suit, when the creditor himself is willing that they be set up in this suit.   And we do not think that it makes any difference whether Lykins is insolvent or not.   He and his assignee hold said lot in trust for the payment of said debt.

We do not think it is necessary to decide what Thompson's

rights, independent and aside from Ludington's rights, would be, for that question is not before us. He claims under, through, and at the request of Ludington. Therefore we do not think that it makes any difference in this suit, and as to him, whether Ludington and Lykins are insolvent or not.

The court below finds that said lot was conveyed by Deitzler to Lykins, not only to pay said note, but also to pay a debt which Deitzler owed to Lykins, and that Lykins so accepted it in payment of both debts. And upon this finding counsel for plaintiffs in error (though they made no issue of this kind by their pleadings in the court below,) refer to several authorities to show that an estate can never pass unless it be a definite and certain estate, or an aliquot part of some definite and certain estate. This proposition is admitted: and it will also be admitted that the amount of said note was not an aliquot part of the consideration or the valuation of said lot. But this makes no difference. It is not claimed by Ludington or Thompson that they are *purchasers* of said lot, or of any estate or title therein. It is not claimed that they furnished any part or portion of the purchase money. It is not claimed that they are the owners of said lot, or any part or portion thereof; and they do not seek, nor have they obtained any judgment decreeing or declaring them to be such owners. Lykins, or his assignee, is the owner of every part and portion of said lot, and all the estate therein; and all the interest that Ludington or Thompson has in it is a mere lien (which is no estate at all,) upon it for the purpose of paying said note. It is a lien similar to a mortgage lien, which in this State is no estate at all; (*Chick v. Willetts*, 2 Kas., 391;) or a judgment lien, or an attachment lien, or a mechanic's lien. It is a lien upon the whole estate, but constitutes no part of the estate, and is not in amount any aliquot part of its value.

The judgment of the court below is affirmed.

All the Justices concurring.