THE PEOPLE'S STATE BANK V. WM. T'MILLER *et al.*,
*Appellees;* (A. H. GRIESA, *Appellant*).

No. 16,901.

### SYLLABUS BY THE COURT.

1. SURETIES—*Indemnity Taken by One of Several Inures to the Benefit of All.* Indemnity taken by one of several sureties from their common principal is taken for the benefit of all.

2. ——— *Same.* One of two sureties was indemnified by a mortgage of the principal's land. He paid the principal's debt and took a deed of the land in satisfaction of his claim on the principal. His cosurety then gave him a note for one-half of the sum he had paid. *Held,* that one-half of the land stood as security for the cosurety's note.

3. ——— *Security Follows Note.* The payee of the note transferred it to another who indorsed and delivered it to a bank. *Held,* that the security accompanied the note and that upon payment of the note by the first indorsee to the bank such indorsee is entitled to a conveyance from the payee of a one-half interest in the land.

4. ——— *Same.* The conclusions stated in paragraph 3 follow notwithstanding the payee was released from liability as an indorser on the note by the bank's failure to take the necessary steps to hold him and irrespective of the solvency or insolvency of the maker of the note.

5. JURISDICTION—*To Compel Conveyance of Land in Another State.* A district court of this state having jurisdiction of the holder of the title to land has jurisdiction to render a judgment requiring him to make a conveyance of it and to enforce such decree by process against him, although the land is situated in another state.

Appeal from Douglas district court. Opinion filed July 7, 1911. Affirmed.

*R. E. Melvin,* for the appellant.

*M. A. Gorrill,* for Bell Brothers Piano Company, appellee.

The opinion of the court was delivered by

BURCH, J.: Griesa appeals from a judgment requiring him to convey one-half of a tract of land in the state of Missouri to the Bell Brothers Piano Company. The judgment rests upon findings of fact and conclusions of law which read as follows:

"(1)   On March 21, 1901, W. J. Gould and Wilford E. Gould, as principals, executed and delivered to Charles R. Metcalf their promissory note of that date for $600, due in one year therefrom.   Metcalf being unwilling to loan $600 to Gould & Gould, they, the Goulds, secured A. H. Griesa and William T'Miller to sign the said note as joint sureties for them.

"(2)   At the time the Goulds secured Griesa and T'Miller to sign said note as joint sureties W. J. Gould promised T'Miller that he would execute a mortgage to Griesa upon the real estate described in the answer and cross-petition of Bell Bros. and Bell Bros. Piano Co. to secure T'Miller and Griesa against loss by reason of their suretyship.   He also promised Griesa, in the absence of T'Miller, that he would execute a mortgage on the same real estate to him, Griesa, to secure him from all loss occasioned by his suretyship, and on the same day that Griesa and T'Miller signed the $600 note with the Goulds W. J. Gould and wife executed the mortgage above referred to and delivered the same to A. H. Griesa.   Griesa did not know when he signed the $600 note that Gould had promised T'Miller that the mortgage should be for the joint security of both Griesa and T'Miller, but such was the intention of Gould when he made the mortgage.

"(3)   The $600 note, not having been paid by the Goulds, was on December 4, 1905, paid by A. H. Griesa, and the entire indebtedness at that time amounted to about $800.

"(4)   After the payment of the $600 note, and on December 4, 1905, W. T'Miller executed and delivered to Griesa his note of that date for $396.90, being one-half of the amount paid by Griesa to Metcalf, and is the note now in suit.   After the making of the note in suit by T'Miller to Griesa, W. J. Gould executed and delivered to Griesa a deed for the real estate in

18—85 KAN.

question. Later on, and before the note in suit matured, Griesa endorsed the same and for value delivered it to Bell Bros. at Lawrence, Kan., and before its maturity Bell Bros. transferred the same to Bell Bros. Piano Company, and Bell Bros. Piano Company transferred the same to the People's State Bank of Lawrence, Kan., the plaintiff in this action.

"(5) At a former term of this court a trial was had between the People's State Bank, plaintiff, and Bell Bros., Bell Bros. Piano Company, A. H. Griesa and W. T'Miller, defendants, resulting in a judgment in favor of the bank against Bell Bros. Piano Company and W. T'Miller. A. H. Griesa was released because of the failure of the bank to give the proper notices of the nonpayment of the note, and the issues between Bell Bros., Bell Bros. Piano Company and A. H. Griesa were reserved for trial and tried now at this time. When Gould deeded the said real estate to Griesa it was in full payment of the Gould obligation to Metcalf. The evidence does not disclose the financial condition of T'Miller, neither does it disclose that the judgment of the People's State Bank has been paid. The defendant W. T'Miller has made default in this action.

"(6) On December 4, 1905, Griesa and T'Miller entered into a written contract as follows:

"'EXHIBIT B.

"'LAWRENCE, KAN., December 4th, 1905.

"'This may certify that A. H. Griesa and W. T'Miller, both of Lawrence, Kan., were joint signers to a note given by Wm. J. Gould and Wilford Gould, his son, for six hundred dollars, with 10 per cent interest, payable to C. R. Metcalf. The interest has been jointly paid by both to July last. That the same note has been paid in full this day by said A. H. Griesa and that the said W. T'Miller has given a note to said Griesa for his half interest in the note for $396.90 with 8 per cent interest, due in one year. It is further known that the said Griesa has a deed to an undivided eighty acres of land, a two-thirds part, near Conway, Dallas Co., Mo., given him as security for his endorsement of the above note of $600, and that when said W. T'Miller can sell the land, or clear the timber and wood from it, at a rate so that he can reimburse said Griesa for what he has paid for it with interest

at 8 per cent interest, said Griesa will deed the land to said T'Miller or his order.

'A. H. GRIESA.

" 'CHAS. R. METCALF, *Witness*.        W. T'MILLER.'

"CONCLUSIONS OF LAW.

" (1)   As to the defendants Bell Brothers Piano Company and T'Miller the debt of Gould to Metcalf still exists.

" (2)   The security taken by Griesa from Gould constituted a trust fund for the payment of Gould's indebtedness to Metcalf and is held for the benefit, not only of Griesa, but for T'Miller and Bell Bros. Piano Company and the bank.

" (3)   Judgment should be entered directing that within five days after Bell Bros. Piano Company shall cause to be entered upon the judgment docket of this court a release and satisfaction of the judgment docket in this case in favor of the bank, showing that it has paid the said judgment in full, that Griesa shall execute a proper conveyance for an undivided one-half of all his interest in and to the real estate conveyed to him by Gould, and described in the cross-petition of Bell Bros. Piano Co., and if such conveyance be not made within the time specified this decree shall stand as such conveyance, and the costs of this hearing be divided equally between Griesa and Bell Bros."

The principal argument of the appellant is to the effect that the Gould mortgage, and afterward the Gould deed, were intended as personal security to Griesa alone.   There are two answers.   The court did not so interpret the evidence, and equity does not permit a principal having two sureties to deplete his estate as against one of them by appropriating a portion of it to secure the other alone.

"As all the sureties are alike liable for a common principal, it will be presumed that the surety taking the indemnity takes it for the benefit of all the sureties, or if he does not, then his taking from the effects of the common principal for his sole benefit is a fraud on the other sureties, and he will not be permitted to have the benefit of the indemnity alone, but must share it with the others."   (1 Brandt, Suretyship, 3d ed., § 294, p. 573.)

The inferences drawn by the trial court are fully warranted by the evidence and the rule of law stated was early recognized and applied by this court. (*Seibert and Lykins v. Thompson,* 8 Kan. 65; *Seibert v. True,* 8 Kan. 52.)

In the case of *Seibert and Lykins v. Thompson,* 8 Kan. 65, the security was taken after the parties became bound, but it is not material that the agreement to indemnify one of the sureties was made before he became liable. The selfish appropriation of a portion of the principal's estate by one surety to his exclusive benefit injures his cosurety in the same manner and to the same extent when made before as when made after the time when the obligation is incurred.

When T'Miller gave his note to Griesa, Griesa held the Missouri land as security for the obligation of T'Miller, represented by the note. The benefit of this security passed to Griesa's transferees, without formal assignment, under the plainest principles of equity.

The fact that Griesa was released from personal liability on the T'Miller note did not change his relation to the security which he held for the note when it was given and which in equity accompanied the note when it passed from him. The matter of T'Miller's solvency or insolvency is likewise immaterial. T'Miller's note was secured by the trust property which Griesa held, and the parties to whom the note was transferred may resort directly to the trust property the same as they might resort to a mortgage given by T'Miller to secure his note.

It is said that T'Miller voluntarily agreed with Griesa that the latter might appropriate the common security to his own exclusive use. The trial court did not so find and this court does not feel warranted in drawing that conclusion from the evidence. The contract exhibited in the findings of fact contains no such an agreement, and as this court interprets it, does not recognize the existence of any such understanding.

.Finally, it is said that the court had no jurisdiction to render a judgment affecting land in Missouri. That a court of one state may, by acting upon the person of a party before it, decree the conveyance of land in another state and enforce execution of the decree by process against such party is well established. (See *Fall v. Eastin*, 215 U. S. 1, and authorities reviewed in the opinion.)

The judgment of the district court is affirmed.