HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

### JOSEPH WHIPPLE AND RANSOM JONES *v.* WILLIAM P. BRIGGS.

#### *Principal and surety.*

A joint action may be maintained by two several sureties, against their principal, if the demand upon which they were sureties was taken up or discharged by their joint note, or with the money obtained upon such a note.

Where such a joint right of action exists, money received by either surety upon securities given to indemnify him for his liability for the principal, will enure to the equal benefit of his co-surety, and be, *pro tanto*, a satisfaction of their claim against the principal.

**6**

ASSUMPSIT for money paid. Plea, the general issue; trial by jury, September Term, 1853,—PECK, J., presiding.

The plaintiffs were severally sureties for the defendant upon two notes for $500 each, one payable to the Bank of Montpelier and the other to the Farmers and Mechanics' Bank in Burlington. One half of the note to the Bank of Montpelier was paid by the defendant at its maturity, and, some time after, a note for $400, signed by the plaintiffs and one Rolla Gleason, as surety, was discounted at said bank, and with it the other half of the note was paid and the note taken up. The $400 note was, at its maturity, paid in money by Whipple, and the cashier, by whom the payment was proved, testified that he had no knowledge of any of this money being furnished by Jones. At the maturity of the other $500 note, on the 19th of June, 1852, a note for $500, signed by the plaintiffs, and also by Rolla Gleason, as surety, was delivered by Jones to the Farmers and Mechanics' Bank, and received by said bank; and the evidence of the cashier tended to show that this note was received in payment of the defendant's note, upon which the plaintiffs were severally sureties, or that it was discounted by the bank and the proceeds applied in payment of the defendant's note; it also tended to show that the note of June 19, 1852, was treated in the books of the bank as the note of Jones, he being the first signer and the person who asked the discount; and that it was of common occurrence that men frequently signed notes to that bank without adding surety to their names who were really sureties to the same. The evidence of the cashier also tended to show that Jones paid the note at maturity. The plaintiffs claimed, from this evidence, that they were entitled to recover the amount of the note to the Farmers and Mechanics' Bank, and the half of the note to the Bank of Montpelier, making about $750, exclusive of interest, and also the interest.

It appeared that soon after the attachment of his property on the 22d of September, 1851, the defendant gave the plaintiff Jones, to secure him for liabilities incurred by him for the defendant, a deed of all his lands in the town of Worcester, being about two thousand acres, of which said Jones had sold seven hundred acres for the sum of $1,400 cash, which he received.

The plaintiffs then read in evidence a note signed by the defend-

ant, as principal, and by the plaintiffs as sureties, to John Morse, for $175, and a note for nearly $500 to the town of Richmond, signed by the defendant, as principal, and the said Jones as surety, upon both which notes, it appeared, suits had been brought, and the defendant Briggs' property attached, which suits were still pending.

There was no evidence tending to prove, nor was it claimed that Jones had paid anything for Briggs, either before or since his receipt of the $1,400, excepting what he might have paid upon the bank notes in question, $30 upon the Morse note and $50 to Briggs, after the receipt of the $1,400.

The defendant requested the court to charge the jury that there was no evidence in the case of any contract, express or implied, by the defendant to plaintiffs jointly to pay this claim, or any portion of it; and he also insisted that, if Jones had money in his hands belonging to the defendant, he should have applied it on these debts, not only to pay his part of the suretyship, but Whipple's also, unless he could show that he had other individual claims or liabilities on which, in equity, it ought to apply.

The court refused to charge the jury as requested, but charged them, among other things that, in order to maintain this action, it was necessary for the plaintiffs to prove an indebtedness or liability of the defendant to the plaintiffs jointly;—that these notes, being signed by each of the plaintiffs severally and individually, and not jointly as partners or in an associate joint capacity, created no obligation on the defendant to the plaintiffs jointly to indemnify them against the notes, or to repay to them jointly what they might be, compelled to pay, but only created an obligation on the defendant to each of the plaintiffs severally and individually, and that the plaintiffs in this suit, by showing that they signed the notes, as surety for Briggs, in the manner indicated by the notes, and showing merely that they had been compelled to pay and had paid them, would not be entitled to recover in this joint action; but that if the plaintiffs signed the notes as sureties for the defendant, and the jury found it proved not only that the plaintiffs paid them, but also that such payments were made out of funds belonging to the plaintiffs jointly, that is, funds which were, at the time of such payment, the joint property of the two plaintiffs, the plaintiffs could, so far as this point is concerned, recover in this joint action the amount

so paid; and that, if the plaintiffs executed the notes signed by them, and Gleason, as their surety, and they (Jones and Whipple) were really as between themselves both principals in those notes, and they were executed with the understanding between them (Jones and Whipple) that each should pay his half of them, and they were so executed for the purpose of being used in payment of the original notes signed by the plaintiffs and Briggs, or to raise money to make such payments, and were delivered to and received by the banks, in payment of said original notes signed by Briggs and the plaintiffs, or were discounted by the banks and the proceeds of such discount applied in payment of the notes signed by Briggs and the plaintiffs, without any division of the money between the plaintiffs, it would be such a joint payment as would entitle the plaintiffs to recover in this joint action, notwithstanding Jones may have paid one of the new notes and Whipple the other.

The court charged the jury that if the Worcester lands were conveyed to Jones to secure him for his liabilities for Briggs, including the two bank notes in question, then, inasmuch as Jones had converted such security into money to an amount greater than the amount he had paid, and, as the parties had neither of them made any application of such funds to any particular debt or liability, the money so received by Jones must be applied on his (Jones) liabilities for Briggs, which Jones had paid, rather than on his liabilities for Briggs which were still outstanding and unpaid, and that the money so received by Jones would operate as a satisfaction of one half the amount the plaintiffs claimed to recover, but that it would be no bar to a recovery in this action of the other half, which the plaintiffs might recover for the benefit of Whipple, if the jury found the other point made out, that is, that the payment, when made, was a joint payment; and that, if the payment by the plaintiffs, when made, was such a joint payment as would sustain this joint action, the fact that Jones had since received money out of the securities of which he was bound to apply sufficient to satisfy his half of the sum claimed by the plaintiffs in this suit, would not bar a recovery to the amount of the other half, nor would it bar such recovery even if Jones had received and still held in his hands moneys received from such securities sufficient to pay all his liabilities for Briggs, and all he had paid for Briggs,

together with the whole amount the plaintiffs claimed to have paid on the two bank notes signed by them.

The jury returned a verdict for the plaintiffs for one half the amount which they claimed to recover. The defendant excepted to the refusal of the court to charge as requested, and to that portion of the charge above given.

*W. P. Briggs, pro se.*

There was no evidence in the case to warrant the charge, and it was therefore erroneous to tell the jury that if they found from the evidence that the notes were paid out of a joint fund, then the plaintiffs could recover, when there was no such evidence in the case. Whether the exchange of notes with Gleason's name on them was payment for the notes given by Briggs, was a question of law, and not of fact. 3 Vt. 236; *Brackett* v. *Waite,* 6 Vt. 411; 13 Vt. 370.

If there was any joint indebtedness from the defendant to the plaintiffs, then most clearly the payment to Jones of the $1,400 was a payment to both; if there was no joint claim, why then the suit fails.

*J. Maeck* and *W. W. Peck* for the plaintiffs.

The plaintiffs' right of action accrued on giving their own notes to the bank and taking up the notes they had signed for Briggs. *Irley* v. *Jewett,* 2 Met. 173; *Maneely* v. *Mc Gee,* 6 Mass. 143; *Thatcher* v. *Dinsmore,* 5 Mass. 299; *Cornwall* v. *Gould,* 4 Pick. 444.

This right of action accrued to them jointly. *Osborne* v. *Harper,* 5 East 225; *Chandler* v. *Brainard,* 14 Pick. 288; *Doremus* v. *Selden,* 19 John. 213; *Doolittle* v. *Dwight,* 2 Met. 561.

Though the plaintiff Jones may be Briggs' debtor, it does not defeat this action. If, in truth, Jones has sufficient of the defendant's money in his hands to pay all the liabilities he is under for him, and the whole of this debt also, Whipple might also maintain an action against Jones at the same time. If the defendant is correct, then if Jones is insolvent, Whipple must lose his debt.

It is at the election of the party who holds several securities for the same debt to prosecute them all at the same time or not. *Stevens* v. *Briggs,* 14 Vt. 44.

The opinion of the court was delivered by

BENNETT, J.   We think this joint action is well brought.   The jury have found that the old notes which the plaintiffs had signed with the defendant, as his surety, had been paid by the new notes which the plaintiffs gave, signed also by Gleason as their surety. It is a common principle that, if two joint sureties pay the note of their principal out of their separate funds, each one has only a right o! action for what he has paid; but if the payment is made out of their joint funds, they have a joint action against their principal.   In the case cited from the 5th of East, a part of the money was paid on the joint credit of the two sureties, and a part of the money had been raised upon their joint note, and it was held that a joint action was well brought.   This seems to be well settled law. See 14 Pick. 283; 19 John. 213; 2 Met. 561.

The difficulty arises on the other part of the plaintiffs' case. The exceptions show that after the plaintiffs had paid the two notes, Jones received from the avails of real estate sold by him, and which had been conveyed to him by Briggs to indemnify him for liabilities incurred, the sum of fourteen hundred dollars; and that Jones still holds this money in his hands, except about the sum of eighty dollars; and it does not appear that Jones has paid at any time, for the use of Briggs, any moneys except the sum of seven hundred and fifty dollars to take up the notes of Briggs to the banks, and the eighty dollars paid to Mr. Briggs himself.   As the case now stands, the plaintiffs cannot recover.   When Jones took the security from Briggs, it enured also for the benefit of his co-surety, Whipple, in equity; and, if the sureties had paid the bank notes which they had signed for Briggs, out of their separate funds, this would not have affected Whipple's right to have claimed a benefit, in common with Jones, in the security, in chancery.   The case cited from the 8th Iredell 286, is in point: see also p. 56 in same volume.   But in this case the plaintiffs show a joint right of action against Briggs for the seven hundred and fifty dollars, and in such a case a release by one would operate as a release by both, and a payment to one would be a payment to both.   As Jones holds the security, upon the facts that now appear, for the common benefit of himself and Whipple, we think the defendant may insist upon an application of so much of the money raised from the sale

of his lands in the hands of Jones as will be necessary to discharge the joint right of action of the plaintiffs against him. This, common justice requires, and Jones does not set up a claim to make an application of the money upon any other demands against Briggs.

If the plaintiffs had been entitled to recover at all, we do not see why the recovery should not have been for the whole, and not for a moiety of the sum paid, to which the county court limited the recovery.

Judgment reversed and case remanded.