JOSEPH WHIPPLE AND RANSOM JONES *v.* WILLIAM P. BRIGGS.

## Principal and surety.

Money realized by a surety on security given him by his principal, to protect his liability as surety, goes to extinguish his claims for payments for the principal in the order in which they are made.

In such a case, the surety cannot apply the money so realized towards the payment of demands unconnected with his relation as surety, so long as any claims, arising from his suretyship, remain unpaid.

J. and W., being co-sureties for B., for whom J. was also individually liable as surety on other matters, B. placed in J.'s hands security for his liabilities for him. J. and W. paid the notes on which they were co-sureties, out of their joint funds. Subsequently, and after J. had paid some, but not all of the notes on which he was sole surety with B., J. realized from the security in his hands a sum of money large enough to reimburse the payments already made by J. and W. and by J., but not large enough to pay in addition the notes on which J. was still liable as surety for B. *Held,* in an action by J. and W. against B. for the money paid by them, that the money received by J. must be applied towards the payments by J. and W. and by J., in the order in which they were made; and that J. had no right to apply the money to the exclusion of the payment of the claim of J. and W., towards the reimbursement of subsequent payments by him individually, or to hold it in anticipation of his liability on notes still unpaid; and, therefore, that J. and W. could not recover.

ASSUMPSIT for money paid. Plea, the general issue, and trial by jury, at the November Term, 1857,—BENNETT, J., presiding.

This action was brought at the March Term, 1853, and on this trial it appeared that in 1851, the plaintiffs were severally sureties for the defendant upon two notes to the Bank of Montpelier, amounting to three hundred and seventy-five dollars, and one to the Farmers' and Mechanics' Bank, in Burlington, for five hundred dollars.

The notes at the Bank of Montpelier were paid by the plaintiffs out of the proceeds of the plaintiffs' note, with one Gleason as surety, which was discounted at that bank, towards which latter note the plaintiff Whipple paid one hundred dollars in May, 1852. The plaintiffs paid the note at the Farmers' and Mechanics' Bank by giving their own note, with Gleason as surety, which note they paid in August, 1852, out of their joint funds.

The defendant proved that on the 24th of September, 1851, he

conveyed to the plaintiff Jones, four thousand acres of land in Worcester and Bolton, worth four thousand dollars, and took from him the following receipt :

" Received, Richmond, September 24th, 1851, from William P. Briggs, quit claim deeds of his interest in lands in the town of Worcester, Washington county, Vermont, and also of all his interest in lands in the town of Bolton; the consideration of which deeds is my liability for the said Briggs on notes and other matters ; and I am to dispose of said lands as I think proper, and am to account with said Briggs for the proceeds of said lands as shall be just and right, and if unsold when I am clear, deed back."

That on the 17th of February, 1853, Jones sold seven hundred acres of these lands for fourteen hundred dollars, of which he paid on that day fifty dollars to the defendant, and that he had retained the balance, thirteen hundred and fifty dollars, in his hands.

The plaintiffs proved that Jones had paid various sums for the defendant at different times, as follows :

| | | |
|---|---|---|
| 1851, Nov. 15. | Paid Briggs' note to E. J. Phelps,.....$151.50 |
| 1852, June 30. | Paid Morse on Briggs' note,.......... | 37.00 |
| 1853, Dec. 10. | do.        do. .......... | 152.04 |
| April 4. | Paid Hickok am't Briggs' note,........ | 138.03 |
| 1852, Sept. 20. | Paid taxes on Worcester lands,....... | 31.75 |
| Dec. 10. | do.        do.        ....... | 20.00 |
| 1853, Feb. 14. | do.        do.        ....... | 20.00 |
| 1854, Jan. 26. | do.        do.        ....... | 4.00 |
| 1856, Sept. 17. | do.        do.        ....... | 26.68 |
| 1857, June 9, | do.        do.        ... ... | 8.31 |
| 1853, April 7. | Paid T. Redfield,................... | 7.00 |
| | Paid Mut. Ins. Co. per Briggs' order,.. | 34.27 |
| | Time and expenses looking after lands,. | 30.00 |
| 1855, Jan. | Balance book accounts on jumping settlement, | 25.00 |
| | Book account accruing since,............ | 52.00 |

The plaintiffs were both sureties for the defendant upon the Morse and Hickok note, and Jones was his surety upon the Phelps note, and they had respectively become sureties upon these notes previous to September 24, 1851. The money paid to Redfield was for his services as an attorney in getting a trespasser off the land conveyed by Briggs to Jones.

Whipple et al. *v.* Briggs.

It further appeared that prior to September 24, 1851, Jones, as the defendant's surety, had signed a note with him to the town of Richmond, which had not been paid, but had ·passed into a judgment against the defendant and Jones.

It was admitted that this debt to the town of Richmond, together with the other claims of Jones individually, mentioned above, amounted to more than the sum received by Jones from the sale of the land.

The defendant offered to prove that in April, 1852, he borrowed of Wires & Peck one hundred dollars, for which he gave his note with the plaintiff Whipple as surety; that of that sum he let Whipple have ninety-one dollars to pay upon the defendant's notes at the Bank of Montpelier, which sum constituted part of the one hundred dollars payment made by Whipple, as before stated; and though the defendant admitted that the Wires & Peck debt was afterwards paid by Whipple, he claimed and offered to prove that such payment was made from the proceeds of the sale by Whipple of some wood belonging to the defendant; but this testimony being objected to by the plaintiffs, was excluded by the court.

The defendant claimed that Jones should apply the one thousand three hundred and fifty dollars arising from the sale of the land, only upon those notes and other matters for which he was liable for the defendant; and that such application should be made in the order in which, as to time, they had been paid, and that inasmuch as it appeared that, at the date of the receipt of the one thousand three hundred and fifty dollars, that sum was more than sufficient to pay the demands embraced in this suit, together with all other sums then paid, this action could not be maintained.

The court refused so to decide, but did decide that the defendant was not entitled to such an application of the one thousand three hundred and fifty dollars, and that, as it appeared that Jones' individual payments, together with the demand of the town of Richmond, exceeded the amount received by Jones from the sale of the land, the plaintiffs were entitled to recover the amount of the two notes at the Bank of Montpelier and the note at the Farmers' and Mechanics' Bank, with interest from the time they were paid by the plaintiffs, and so instructed the jury, who returned a verdict accordingly.    Exceptions by the defendant.

9

---

Whipple et al. *v.* Briggs.

---

*William P. Briggs* and *Daniel Roberts*, for the defendant.

*Jacob Maeck* and *William W. Peck*, for the plaintiffs.

The opinion of the court was delivered by

BARRETT, J.   This case, when before this court at a former term (see 28 Vt. 65), showed that the plaintiffs had become co-sureties for the defendant on the two notes, for the payment of which this suit was brought, and as such sureties, they had jointly paid about seven hundred and fifty dollars, exclusive of interest; that they had also become, and were co-sureties for the defendant, on a note to John Morse, for one hundred and seventy-five dollars; that Jones alone had become, and was surety for the defendant on a note for five hundred dollars, to the town of Richmond; that, on the Morse note, Jones had paid thirty dollars, and had also paid fifty dollars to the defendant himself, after receiving fourteen hundred dollars, as the proceeds of the sale of a portion of the lands which had been conveyed to Jones as security on liabilities incurred by him for the defendant.   It did not then appear that Jones had paid anything more for Briggs.   It did appear that suits were then pending on the said notes to Morse, and the town of Richmond, in which suits the property of Briggs had been attached.

Upon this state of facts, the court, by BENNETT, J., say that "As Jones holds the security for the common benefit of himself and Whipple, we think the defendant may insist upon an application of so much of the money raised from the sale of his lands in the hands of Jones, as will be necessary to discharge the joint right of action of the plaintiffs against him."

It is apparent, upon the case as it then stood, that an application of the money realized by Jones from the sale of said land, to reimburse the full amount of the payments made in the bank debts, together with the fifty dollars paid to the defendants, and the thirty dollars paid on the Morse note, would not have left in Jones' hands enough to reimburse him, in case he should have the residue of the Morse note and the whole of the debt to the town of Richmond to pay; to the payment of both of which he was liable and could be compelled.

As we apprehend that decision of this court, it seems that, as

between the different instances of liability, the rule of administering the security held by Jones for his liabilities for the defendant, is not affected by the fact, that in some of the instances he was *solely* liable, while in others he was severally liable with a co-surety, who, jointly with him, has paid a debt; and that, in applying this rule, the proceeds of the security in Jones' hands, are to be treated with reference to cases of joint payment by the two sureties, precisely the same as if the payment had been made by Jones alone.

The idea of the right of Jones to a priority of indemnity for his sole or several liabilities for Briggs, as against those discharged by the joint payment made by himself and Whipple, is directly repudiated by the former decision in this case; for it there was shown that Jones was severally and solely liable on other debts for Briggs, and that the money realized from the sale of the land, if applied to satisfy the payments made on the bank notes, would be insufficient indemnity for said several and sole liabilities. Yet the court held that that money, thus held by Jones, inured to the benefit of his co-surety, and operated as a satisfaction of the joint claim arising from the joint payment of the bank debts. We are not disposed to regard that decision otherwise than as a sound and just exposition of the contract, evidenced by the receipt of Jones, given on the occasion of taking the deed of the lands named in said receipt. Jones had received and held the security as indemnity to himself for his liability on the notes to the two banks. He resolved his claim against the defendant under that liability, into a joint claim in favor of himself and his co-surety, and is seeking to enforce that claim by this suit. If the security he holds, or the proceeds of it, would operate in case Jones alone had paid the bank debts, to reimburse him for those payments, and so preclude a right of action in his own name therefor, the same effect must be allowed as to the joint payment made by the plaintiffs.

Under these views, what effect should be given to the receipt by Jones of the money arising from the sale of the land conveyed as security?

In view of the purposes for which he received the security, and converted the same into money, agreeably to his receipt, Jones held that money to reimburse whatever he had paid, or thereafter should pay, on the debts on which he, or he and Whipple were liable as the

surety of Briggs.   This being so, when Jones received the money as the avails of that security, the payment of those notes was reimbursed, and was no longer a ground of claim, either by himself or Whipple; and this without any specific act appropriating or designating a part of the money for that purpose.   In other words, the money was thus appropriated by the very fact of being received.   It is true that the case now contains some facts which it did not when it was formerly before the court; but those additional facts do not change the case so as to prevent the principle of the former decision from controlling the decision now to be made.

It is clear that any matters of deal, disconnected with Jones' relation of suretyship, which he may have had with the defendant, is outside of the purposes for which the security was given, and can not be allowed to interfere with the exclusive devotion of the money realized from the security, to reimbursing the claims resulting from that suretyship.

It would seem also, that any matters of contingent claim or liability cannot, independently of some arrangement between the parties, be a ground for withholding that money from application in satisfaction of payments made on debts, upon which the parties entitled to the security were held as sureties, without infringing the prin ciple and rule established by the former decision.

For  present  purposes,  therefore,  the matters of book account, and the payment of insurance, and the debt to the town of Richmond cannot influence the result.

While we have no doubt that the payment of the taxes would be a good accounting, as between Jones and the defendant, for the proceeds of the land sold, yet, in the absence of any agreement, we see no reason why the fund received on the sale of the land, should be reserved for, or applied to, the reimbursement of taxes paid, or to be paid, in preference to reimbursing the money paid in discharge of liabilities incurred by becoming surety.   In this view, whether the money shall be applied in satisfaction for taxes paid, must depend on the *time* of their payment, with reference to the time of the payment of debts by the sureties, for whose benefit as sureties, the security was held.

It is obvious that the money in Jones' hands was ample to meet all the payments that had been made, both by him and Whipple

Whipple et al. *v.* Briggs.

jointly and by him alone, as sureties for the defendant, as well as the taxes paid by Jones prior and up to the time this suit was brought.

Upon the principles and views above announced, the result is, that as the case now stands, the plaintiffs are not entitled to recover.

Though not necessary to the present decision of the case, we regard it proper to say, that the payment of the ninety-one dollars to the Bank of Montpelier, must be treated as having been made by the defendant. The offer was to prove that the defendant borrowed one hundred dollars of Wires & Peck, for which he gave his note, signed by Whipple as his surety. When thus borrowed, this was the money of the defendant. As such, he let Whipple have ninety-one dollars of it to pay, and he did pay it on that note to the bank. Subsequently Whipple paid the note to Wires & Peck, but (as the offer to prove was) out of money derived by Whipple from wood belonging to the defendant and sold by Whipple. This payment must be regarded as having been made with the defendant's money, and therefore, (if proved) would diminish, by so much, the amount which the plaintiffs would be entitled to recover, if the case stood in their favor on the main ground.

We think the court erred in excluding the evidence offered.

We have examined the authorities cited and discussed in the argument, and it seems to us that the views which we have taken of this case are entirely consistent with well established principles, as well as the precedent of adjudged cases, and at the same time, give legitimate effect to the decision of this case, as reported in 28 Vt. *supra.*

In the absence of any specific arrangement between the parties, as to the particular application of the money arising from the sale of the land, and in the absence of any specific appropriation of the money by either of the parties before the bringing of this suit, if the law, in making the application, is to take cognizance of the supposable or probable intent of the parties at the time the security was given, we think our views are in accordance with that intent, and carry it into effect. If the apparent equity of the case as between the parties is to be regarded, we think these views best serve that equity.

There are several other questions presented by the exceptions, upon which it is unnecessary at present to express an opinion.

Judgment reversed and cause remanded to the county court.