## MARSHALL MILLER *v.* FRANKLIN SAWYER.

### [IN CHANCERY.]

*Right of a surety to a proportionate share in the avails of indemnifying securities furnished his co-surety by the principal.*

Persons, subject to a common burthen, stand, in their relation to each other, upon a common ground of interest and of right, and whatever relief by way of indemnity is furnished to either, by him for whom the burthen is assumed, inures equally to the relief of all the common associates.

A. and B. were sureties upon a note for C. C. afterwards executed his own note to B. for half the amount of the other note, payable on demand, by which he might secure himself for his liability as surety whenever he pleased. B. subsequently received still another note from C. for goods sold him, and brought an action against C., on both of the notes which he had received from him, and recovered judgment, and collected sufficient thereon to pay the first note and part of the other. C. having after this become insolvent, A. and B., by agreement, paid each one half of the note on which they were sureties, but this was done by A. in ignorance that B. had received any indemnity from C. *Held,* in a suit in chancery, brought by A. against B. for that purpose, that B. was bound to account to A. for one half of the amount of the indemnifying note, received by him from C., at the time he obtained judgment thereon, with interest from the time of such judgment.

APPEAL from the decree of the court of chancery.

The facts in the case sufficiently appear in the opinion of the court. The chancellor dismissed the bill, and the orator appealed.

*A. Keyes* and *J. Dorr Bradley*, for the orator.

1. *a.* The doctrine of contribution among co-sureties is not founded upon contract, but is the result of a general equity, on the ground of *equality* of *burden* and *benefit.* " *Qui sensit commodum sentire debet et onus*; 1 Story's Equity, sec. 493, p. 472; Burge on Suretyship; *Deering* v. *Earl of Winchelsea,* 2 Bos. & P. 270; *Fletcher* v. *Grover,* 11 N. H. 368; *Tyus* v. *DeJarnette,* 26 Ala. 580; *Swain* v *Barber,* 29 Vt. 292: *Taylor* v. *Marvin,* 26 Ala. 728.

*b.* And the principle being founded in equity, co-sureties have a community of interest in that relation, which equity requires to be executed in good faith to each other.

*c.* Like partners they can have no separate selfish interests growing out of that relation.

*d.* They are considered trustees for their co-sureties of any indemnity they may have while that relation exists, and are liable for any mismanagement; *Goodloe* v. *Clay,* 6 B. Mon. 236; *Hall* v. *Robinson,* 8 Iredell 56; *Teeter* v. *Pierce,* 11 B. Mon. 399; *Taylor* v. *Marvin,* 26 Ala. 728.

2. Sureties have *no claim* against their principal or against each other, until they have paid the debt for which they are sureties; but after payment their right becomes fixed, and their claim for contribution perfect; *Bishop* v. *Day, et al.* 13 Vt. 81.

The remedies in equity to compel the principal to pay the debt, and to compel the creditor to collect the debt, are not founded on any vested claim, but are in the nature of bills, *Quia timet,* for relief against possible injury.

3. *a.* When one surety has received security from his principal, *intended for his part of the debt,* before the same is paid for the principal, such security inures as well for the benefit of his co-surety as for himself; 1 Story's Equity, sec. 499 p. 477; *Messer* v. *Swan,* 4 N. H. 481; *Lowe* v. *Smart,* 5 N. H. 353; *Bachelor* v. *Fisk,* 17 Mass. 464; *Fagan* v. *Jacocks,* 4 Dev. 263; *Moore* v. *Moberly,* 7 B. Mon. 299; *Moore* v. *Bray,* 10 Barr 519; *Gregory* v. *Murnell,* 2 Ired. 234; *Chilton* v. *Chapman,* 13 Mo. 470; *Bobbitt* v. *Flowers,* 1 Swan 511; *Steele* v. *Muling,* 24 Ala. 285; *Tyus* v. *DeJarnette,* 26 Ala. 580; *Prindle* v. *Paige,* 21 Vt. 94; *Whipple & Jones* v. *Briggs,* 28 Vt. 65.

*b.* When the relation of surety exists, and before the surety has acquired a *claim* against the principal by payment, equity scrupulously guards the funds of the principal, that neither surety can appropriate the same exclusively to his own benefit. For it would be a fraud for one surety to exhaust the funds of the principal for his own benefit to the exclusion of his co-surety.

Indemnities given *after* payment by sureties, and their *claim* perfected, might admit a different consideration.

*W. C. Bradley,* for the defendant.

The respective liabilities which attached at the time of the execution of the note to the bank, were

1. That each signer was holden to the creditor to pay the whole debt; *Boulter v. Peplow,* 9 Man. & Granger 507 [67 E. C. L. R.].

2. That the principal was under an implied contract, arising simultaneously with the relation, to indemnify each surety from any legal injury he might sustain by the responsibility he had assumed; 1 Pick. 121, *Ellis* v. *Bryant;* 3 Met. 171, *Appleton* v. *Bascom.*

3. That each surety, in case principal was insolvent, would pay his equal proportion of the debt, *ib.*

4. That if he was required to pay *more,* he was entitled to remedy against his co-surety, and this whether he knew that the other and become surety; *Deering* v. *Earl of Winchelsea,* 1 Cox. 315 [S. C. 2 B. & Pull. 270]; *Craythorne* v. *Swinburne,* 14 Ves. 164.

In the present case, the principal alone has become insolvent, and as to the sureties, they, having from the beginning remained solvent, the liability to each other at the time of the contract, was to pay one half, and has remained so ever since, whether this liability then arose under the equitable doctrine that equality is equity, or under the legal implication that each would bear his own burden, and so the parties have considered it, and each out of his own money paid his moiety, the payment being made on the part of Sawyer at the request of Miller; *Wood* v. *Leland, et al.* 1 Metc. 387.

The complaint in the bill is not that Sawyer has not paid his proportion, but that he obtained "funds sufficient," and ought to have applied them in payment of the whole, but has omitted so to do; 1 Story on Equity, § 499.

There has always been a doubt whether a creditor or surety

obtaining security *after* the making of the contract is liable to contribution, unless from its amount or some agreement it is expressly for the benefit of both; *Wade* v. *Cooper*, 2 Sim. 156–158; *Hinsdill* v. *Murray*, 6 Vt. 136; *Smith's Estate*, v. *Steele*, 25 Vt. 427.

In this last case the security was ample, and was taken at the time of the enlargement of the liability of the surety.

But it appears by the answer that Sawyer never had "funds sufficient" to pay his own moiety, but that he took the principal's note to that amount, to be used for the purpose of saving himself in respect to that particular moiety [1 Pick & 3 Met. *ut sup.*], and this he might well do, as the creditor might at any time have sued him for his proportion; *Cowell* v. *Edwards*, 2 Bos. & Pull. 268.; and he was entitled to enforce it, *when endangered* and before the payment of the original debt; *Tankerly* v. *Anderson*, 4 DeSau S. C. R. 44.; the note to Sawyer, however, was not properly a collateral security, being no more than the law implied in favor of each surety at the time of the original contract; 1 Pick, 3 Metc. *ut supra.*

It is admitted by the answer, that Sawyer put this note in suit together with another claim of thirty-two dollars and fifty cents, and after the payment of his proportion to the bank, collected thereon one hundred and eighty dollars and sixty-eight cents, from which is to be deducted the amount of the small note and costs, thirty-seven dollars and seventy-eight cents, and the whole sum received by Sawyer on account of moiety and interest, proves to be only one hundred and forty-two dollars and ninety cents, which is manifestly less than his proportion of the debt.

This being the case, Miller could have no claim on him for contribution, for such claim did not arise until Sawyer had received, or Miller paid, more than his proportion, which has not been done; *Gifford's case*, 6 Ves. 805; 1 Story's Equity, § 498, page 477, note, 2d. ed.; *Davis* v. *Evan Humphreys*, 6 Mees. & Wel. 152; *Moore* v. *Moore*, 4 Hawkins 358; *Wade* v. *Cooper*, 2 Sim. 155 [358]. That Sawyer did not give notice to Miller of the steps he was taking, constitutes no fraud so long as he concealed none from him. The attachment, judgment and levy, repel the idea of privacy, and Sawyer was under no obligation to do more than he did.

The opinion of the court was delivered by

BARRETT, J.   This case was tried on bill and answer; from which it substantially appears, that in April, 1851, the orator and the defendant became sureties for Perry, on a note for three hundred dollars to the Savings bank at Brattleboro, payable on demand with interest; that on the 1st day of May, 1852, Perry executed his note to the defendant for one hundred and fifty-four dollars and fifty cents, payable ou demand, so that the defendant might secure himself at any time for the moiety of said bank note, which he might be made to pay; that in February, 1854, said Perry executed another note to the defendant for thirty-two dollars and fifty cents, for other indebtedness; that in November, 1854, the defendant brought a suit on both of said notes against said Perry, and attached property to secure the same; that on the 7th of December, 1854, Perry confessed judgment in said suit for the amount of both of said notes, being two hundred and eight dollars and fourteen cents, and for costs, three dollars and ninety-one cents, on which judgment the defendant took execution, and caused it to be levied on the property attached, and said property to be duly sold under said levy, and the proceeds of said sale, exclusive of officers' fees, were duly paid to the defendant, being one hundred and eighty dollars and twenty-eight cents, leaving due on the execution twenty-seven dollars and eighty-six cents; that Perry had become insolvent and left the place, and said bank note rested on the sureties to pay; that in January, 1855, the orator, not knowing of any of these transactions between Perry and the defendant, furnished the money with the knowledge and concurrence of the defendant, and paid one half of said note to the bank; being one hundred and fifty-four dollars and fifty cents, and the defendant, at the same time, furnished the money and paid the other half.

The object of the bill is to compel the defendant to account and pay to the orator one half of any payment, or of the proceeds of any security, made to the defendant to indemnify him for signing said bank note.

So far as the case shows, whatever was received by the defendant, as indemnity against the consequences of his suretiship for Perry, came through the instrumentality of the note of May 1st, 1852.   In what character, and subject to what rights of his

co-surety, did the defendant receive, hold, and proceed with that note?

The leading and well considered case of *Deering* v. *Earl of Winchelsea*, et al. 1 Cox 318 (S. C. 2 Bos. & Pul. 270) announces the principle which defines and governs the relations, rights, and duties of co-sureties towards each other. That principle, with entire uniformity, has been promulgated in all the text books, and adopted, illustrated, and applied by the courts in England and this country, so often as cases have occurred involving it. For present purposes it is needless to cite and discuss the books and cases to any considerable extent, in which this subject is treated, and the leading principles of it applied in settling the rights and duties of parties. It may be comprehensively stated, that persons subject to a common burthen, stand in their relation to each other, upon a common ground of interest and of right, and whatever relief, by way of indemnity, is furnished to either, by him for whom the burthen is assumed, inures equally to the relief of all the common associates.

In *Hinsdill* v. *Murray* 6 Vt. 136, Judge Phelps, with characteristic comprehensiveness and point says, "No rule of law is better settled than this, that if one of two co-sureties take a pledge from the principal, or receive property from him as a means of indemnity against the joint liability, the other is entitled to the benefit of it, so far as respects an application of it to the debt; and if the latter is compelled to pay the debt, he is entitled to the fund. This results from his right to indemnity as respects his principal, and the principle of contribution as regards the co-surety."

In *Hall* v. *Robinson*, 8 Iredell 56, Ruffin, Ch. J., in accordance with the uniform voice of the courts, says, "The relief between co-sureties in equity proceeds upon the maxim that *equality* is *equity*, and that maxim is but a principle of the simplest natural justice. It is a plain corrollary from it, that when two or more embark in the common risk of being sureties for another, and one of them subsequently obtains from the principal an indemnity or counter security to any extent, it inures to the benefit of all. The risk and the relief ought to be co-extensive. * * * It is to be recollected that the indemnity, as soon as it was obtained, inured to the benefit of both sureties. It was precisely the same as if it

28

had been expressly declared to be for their joint benefit. If it had been so declared, no one would argue that one of them could deal with it to his own advantage, and to the prejudice of the other, without consulting him. * * * One surety, who gets an indemnity, is a trustee for a co-surety, and can not deal with the fund to his prejudice without his consent."

In *Whipple & Jones* v. *Briggs*, 28 Vt. 65, the court held the same doctrine, and that case in Iredell's Reps., and another in the same volume, are cited with approbation.

In the case of *Bachelder* v. *Fisk*, 17 Mass. 464, the court makes an instructive application of the same doctrine. See also 5 Barb. S. C. R. 399 ; 4 Hawkes 358.

Without specifically referring to other books or cases, it is sufficient for present purposes to say, that the ground assumed, and most ably and ingeniously defended by the venerable counsel for the defendant, viz : that the rights of the co-surety are the result of, and are to be wrought out through the original contract of suretiship, is not sustainable either upon principle or authority. The case first cited of *Deering* v. *the Earl of Winchelsea*, expressly negates such a doctrine. In that case the point was directly presented, considered, and decided. The entire current of subsequent cases, involving this subject, is in conformity with that case.

In the light of the principle thus announced, and which has been illustrated by frequent and various applications, the result of the present case is quite obvious, unless we assume to innovate upon the law of our own courts, as well as of the courts of the other states and of England.

Clearly, in equity, the defendant received and held that note for the equal benefit of himself and the orator; and in his trust relation to the orator, he was bound to render it available for the purposes for which he held it, to the utmost extent that he could, by reasonable diligence and fair dealing. The result of his suit against Perry shows that he could and did secure more on Perry's property than the amount of that note. If he had sued that note only, the avails of the property attached would more than cover the amount of the judgment that he would have recovered.

Inasmuch as the defendant kept the existence of such an indemnity secret from the orator, notwithstanding the orator's equal right

Miller *v.* Sawyer.

and interest in it, and managed it in his own way, without enabling or permitting the orator to participate, for the purpose of making it productive to the utmost for their mutual relief, it is but the most obvious dictate of reason, as well as of the law applicable to the subject, that the defendant should be made answerable for all that the case shows might have been realized upon the note given by Perry to the defendant.

Is the defendant to be allowed, by interposing a debt of his own, which accrued long subsequently to the incurring of the common liability by the orator and the defendant, and long subsequently to the receiving of this means of indemnity against that common liability, to countervail, for his own benefit, the common benefit of himself and the orator? In other words, is his fiduciary duty to be held subordinate to his individual interest? We do not regard the doctrine and usage of the courts, or the dictates of a healthy sentiment of moral duty as permitting it. It seems to us clear, both on principle and authority, that in view of the facts in this case, the full amount due on the note received of Perry by the defendant at the time the judgment was rendered in the suit against Perry, should have been applied by the defendant in payment of the bank debt, and thus, to that extent, the common burden of suretiship, under which the parties to this suit were laboring, would have been relieved. If this had been done, there would have been due on the bank debt only the balance to be shared and borne equally by them.

As all the proceedings upon the note given by Perry to the defendant, were without the knowledge or consent of the orator, of course he ought not to suffer prejudice to his rights as against the defendant by the fact of having voluntarily paid the one-half of the bank debt. Good faith, as well as the requirements of legal equity, made it the duty of the defendant to apply the proceeds of that note in diminution of the common burden; and when the subject of paying the bank debt was proposed between the parties, and the payment of it was about to be provided for, it was equally the duty of the defendant to apprise the orator of the true state of the case, and thus have relieved him from the supposed necessity of furnishing one-half of the full amount of the bank debt.

It can not be tolerated, that as the result of a silence or secresy which the defendant, in the eye of the law, was not justified in

practicing, he should be permitted to gain or hold an advantage over the orator which the whole doctrine of equity repudiates and prohibits.

The defendant must therefore be regarded as holding money in trust to the use of the orator, equal to one-half of the amount due on the note of Perry to the defendant, at the time of said judgment, and, in equity, bound to pay it over to him, with interest from the date of said judgment.

The decree of the chancellor is therefore reversed, and the case remanded to the court of chancery, with directions to make a decree accordingly, with costs.