HAVEN, Respondent, *vs.* FOLEY & PAPIN, Appellants.

1. The payee of a note will be entitled to the benefit of any counter security given for the indemnity of an indorser, and a party to whom the debt evi-denced by the note is transferred, will also be entitled to the benefit of the counter security. (*Haven* v. *Foley & Papin*, 18 Mo. Rep. 136, affirmed.)

2. Where the payee of a note, indorsed by one who holds a deed of trust for his indemnity, agrees to accept the note of a third party, and substitute him as the creditor of the maker of the original note, to which agreement the indorser is a party, the substituted creditor will be entitled to the benefit of the deed of trust, although it was a part of the agreement that the original note should be delivered to the indorser.

3 The substituted creditor, when sued for the property by a subsequent in-cumbrancer, will be protected in equity, although the note was not assigned to him, if the debt evidenced by the note was transferred to him.

*Appeal from St. Louis Court of Common Pleas.*

This was an action for the recovery of personal property or its value. The defence set up in the answer is stated in the opinion of the court, delivered when the cause was formerly here. 18 Mo. Rep. 136. The case now comes here after a trial upon the issue made by the answer. The defendants read in evidence the deed of trust given by James Shepard to secure E. H. Shepard, as his indorser, upon the two notes made by him to Emerson, and also the assignment of the said deed of trust and of the property therein described, by E. H. Shepard and the trustee to the defendants. They then proved by Emer-

Haven *v.* Foley.

son that it was agreed between himself and E. H. Shepard and the defendants, that the latter should execute to him their own note, with indorsers, for the amount of the notes of James Shepard, in exchange for those notes, and that E. H. Shepard should assign to the defendants the deed of trust; that the defendants did execute to him their notes for the amount, indorsed by C. D. Sullivan & Co.; that he (Emerson) thereupon delivered up the notes of James Shepard to E. H. Shepard, who was to indorse the same without recourse to the defendants. Emerson stated that it was no part of the agreement that he himself should indorse the notes. E. H. Shepard stated the agreement to be that the defendants should execute their own notes, indorsed by C. D. Sullivan & Co., to Emerson, *in payment* of the notes of James Shepard, indorsed by him and held by Emerson, in consideration of which he was to assign to the defendants the deed of trust, which was executed by James Shepard to him for his indemnity as indorser, and deliver to them the property covered by said deed of trust, which he did. He stated that he never agreed to assign nor deliver the notes of James Shepard to the defendants, but that the understanding was that he (E. H. S.) should keep the notes; that he had since offered to deliver the notes to the defendants after taking off his name, if they would pay certain expenses, which they refused to do. The court below gave the following among other instructions:

2. If the jury find from the evidence, that it was agreed between Emerson, E. H. Shepard and Foley & Papin that F. & P. should execute and deliver to said Emerson their notes, for the same amount as those made by James Shepard, in lieu thereof, and payable at the same times, and indorsed by C. D. Sullivan & Co., and that, in consideration thereof, the deed of trust from said James to E. H. Shepard's trustee, given in evidence by the defendants, should be assigned and delivered to said Foley & Papin, and the said notes of the said James should be delivered to said E. H. S., and if they also find that, by said agreement, the defendants were to take the place of

said Emerson, as the creditors of said James Shepard, and that the notes of the defendants, indorsed by C. D. Sullivan & Co., as above described, were executed and delivered in pursuance of said agreement to said Emerson, who, thereupon, delivered the said notes of said James to said Elihu H., and that said deed of trust was assigned and delivered to said Foley & Papin, together with the property therein described, and that said property is the same sued for in this action, then the plaintiff cannot recover."

The plaintiff asked the court to direct the jury that the defence was not made out, if Emerson did not agree to indorse or assign the old notes to Foley & Papin, and did not indorse or assign them, which the court refused to do.

After a verdict and judgment for the defendants, the plaintiff again appealed to this court.

*M. L. Gray* and *N. & S. A. Holmes*, for appellant. 1. The court erred in refusing to direct the jury as asked by the plaintiff. 2. The instruction given is erroneous in leaving out of view the fact whether there was an agreement by Emerson to assign the debt to the defendants. Under that instruction, the jury might find for the defendants, consistently with the idea of a voluntary *payment* by defendants of James Shepard's debt. 3. It having been agreed that E. H. Shepard, as the surety on James Shepard's notes, should be discharged, the deed of trust was extinguished, and it makes no difference that there may have been an agreement to deliver the notes to the defendants. 30 Maine, 35. 31 ib. 501. 19 Pick. 434.

*T. B. Hudson*, for respondents.

GAMBLE, Judge, delivered the opinion of the court.

1. When this cause was formerly in this court, it was held that Emerson, as the holder of the notes of James Shepard, indorsed by Elihu H. Shepard, was entitled to the benefit of any counter security given by James Shepard to Elihu H. Shepard, his security upon the notes. It was further held

that, if by the agreement between Emerson, Elihu H. Shepard and Foley & Papin, and the acts of the parties under such agreement, F. & P. became the creditors of James Shepard, substituted for Emerson, then F. & P. became entitled to the counter security, which had been given to Elihu H. Shepard.

2. The instruction given upon the trial of the case, presents difficulties which might readily have been avoided. The answer of the defendants alleges that the agreement between Emerson, Elihu H. Shepard and the defendants was, that the defendants should execute their note to Emerson in lieu of those made by James Shepard, and that James Shepard's notes should be delivered *to them* and the deed of trust and property held by Elihu for his security should be assigned and transferred to the defendants. The instruction puts it to the jury to find that the agreement was, that the notes of James Shepard were to be delivered to Elihu H. Shepard, and that by the agreement, the defendants were to take the place of the said Emerson as the creditors of James Shepard. There was no necessity for departing, in the instruction, from the terms of the agreement, as set up in the answer. The defendants state the agreement and allege its execution as a bar to the plaintiff's action, and the court, with great propriety, might have put the case to the jury as the defendants themselves had stated it. Still, we are to consider whether the instruction placed before the minds of the jury the real question of defence. The defence is, that, by the agreement, the notes of the defendants, delivered to Emerson, were substituted for those of James Shepard, and were not in satisfaction of them, and that the defendants were to become the creditors of James Shepard. The notes of Shepard were still to be outstanding and unsatisfied, for in no other way could the defendants be the creditors of James Shepard. If they had made a mere voluntary payment of the notes to Emerson, without the knowledge or request of James Shepard, while yet his notes were not due, they would not have been the creditors of J. Shepard. The instruction, then, must mean, that the notes of J. Shepard were

to continue to be in force and available for the defendants, when it puts the question to the jury whether, by the agreement, the defendants were to take the place of Emerson as the creditors of James Shepard. Such being the question upon which the jury were required to pass, it became of little importance whether the notes were to be delivered to Elihu H. Shepard or to the defendants.

3. The plaintiff insists that his action is not affected by the arrangement between these parties, because Emerson did not assign the notes of James Shepard to the defendants, and therefore they cannot claim any of the rights which may have belonged to him as the payee of the notes. But it is to be remembered, that we are not determining the case according to the common law. We have already recognized and applied in this case the principles which belong entirely to equity jurisprudence. Such is the meaning of the code of practice. No assignment by an indorsement of the notes of J. Shepard was necessary to substitute the defendants for Emerson, as the creditors. The delivery of the notes with that intent, for a valuable consideration, is all that is required in equity. 2 Story's Equity, 311, §1047. *Heath* v. *Hale*, 4 Taunt. 327. Although such transfer may not be sufficient to authorize the holder of a bond or note to maintain an action in his own name, it will create an equity which will be recognized and protected. The question of fact, then, was tried by the jury, whether, under the agreement, the defendants had been substituted for Emerson as the creditors of James Shepard, and was found for the defendants, and, under the principles declared in the former opinion in this case, the judgment was correctly given for the defendants. The judgment is affirmed.