## L. VAN ORDEN, ADMINISTRATOR OF THE ESTATE OF CATHARINE BRADY, DECEASED *v.* R. W. DURHAM, RALPH BIRD, GEORGE C. PERKINS, M. MAURICE, JR., C. F. LOTT, AND J. M. BROCK.

CREDITOR'S RIGHTS IN DEBTOR'S PROPERTY IN HANDS OF SURETIES.— If a surety has a counterbond, or security from the principal debtor, the creditor will be entitled to the benefit of it, and may in equity subject such security to the satisfaction of his debt, so far as it can be done without trenching upon the rights of the surety himself.

RIGHT OF SURETY BY MORTGAGE, WITHOUT PERSONAL LIABILITY, TO INDEMNIFY HIMSELF.—Where D., as surety for H., executed a mortgage on his lands to secure the payment of notes executed by H. alone, the mortgage containing no covenant on the part of D. to pay said notes, but on the contrary expressly providing that D. should not incur any personal cost or liability, and afterwards took a mortgage or conveyance of other property from H., the principal, to indemnify himself against any loss he might sustain by reason of his mortgage to secure said notes of H : *Held*, firstly, that the holders of the notes might subject the premises mortgaged by D. to the payment of the notes; or, secondly, that they might abandon the mortgage and subject the said property of the principal in the hands of D. to the payment of the notes ; or, thirdly, that they might have the property mortgaged to secure the notes sold, the proceeds applied to their satisfaction, and if any balance remained, subject the surplus of any property of H., the principal, in the hands of D., that might remain after fully compensating D. for any loss or damage resulting to him by reason of the appropriation of the property mortgaged by him, to the satisfaction of the notes of H.; but, fourthly, that the holders of the notes *are not entitled to appropriate both the property mortgaged* to secure the notes, *and that conveyed or mortgaged by the principal, H., to the surety, D., for the indemnity of the latter.*

IDEM.—The limit of the liability of D., in the case stated, is his own property mortgaged, together with any surplus remaining in his hands from the securities received by him for his own indemnity, after fully indemnifying himself out of the latter for the damages resulting from the mortgage of his own property to secure the notes of H.

IDEM—COSTS.—D. should not be personally charged with costs in this action to foreclose the mortgage, and subject the securities in his hands to the payment of the notes, unless he either made an unsuccessful defense against the foreclosure of his own mortgage, or unless some surplus of the securities beyond the property mortgaged is found in his hands subject to be applied to the payment of the notes ; nor should the mortgaged lands be charged with the costs of any unsuccessful attempt to obtain more than the rights of the noteholders justified under D.'s mortgage.

APPEAL from the District Court, Second Judicial District, Butte County.

The defendant Durham appealed. Bird transferred two of the notes to Catharine Brady, and the plaintiff was the administrator of her estate.

The other facts are stated in the opinion of the Court.

*J. E. N. Lewis*, for Appellant.

If Durham is liable to plaintiff, it must be upon some contract different from the one stated in the complaint. The Court in its findings does not pretend that Durham agreed or promised to pay the notes *as charged* in the complaint; but has attempted to make a cause of action for plaintiff different from the one charged, and has sought to enforce some supposed trust for the benefit of plaintiff.

Did the transaction between Durham and Hopkins create an express trust, or security for plaintiff?

We say, no. The written instrument does not say that the property is transferred and delivered to Durham to pay those notes, or to *secure* the indebtedness. It creates an independent transaction between Durham and Hopkins, leading to Durham's safety alone. The indemnity did not run to the debt, but to Durham's loss, or probable loss, by the sale of Durham's property. It was a matter of no moment, as we understand that instrument, whether the holders of the notes made their money or not. Since Durham was not holden for the debt, he had a perfect right, even if Hopkins was a bankrupt, to receive property to indemnify him on account of property that he had incumbered as a matter of accommodation to secure Hopkins' debt. The right to do that was and is as clear and unquestionable as if he had been a creditor of Hopkins, and Hopkins had sold or transferred property to him to pay or secure its payment. The instrument affords no evidence of a promise creating an express trust for the benefit of the holders of the notes, and the oral testimony of the witnesses makes no approach to proving such a promise, or any promise creating such a trust.

Did the transaction create an implied trust for the benefit of the holders of the notes? Or, in other words, did the transaction between Durham and Hopkins culminate in a further security of Hopkins' indebtedness to the holders of the notes?

We say, no. The transaction, in legal intendment, was not a security for the debt. The indemnity did not run to or against Hopkins' indebtedness, but to Durham's probable loss arising from the sale of his property.

The respondent's counsel in the Court below contended—and I presume will renew the argument—"that a creditor is entitled to the benefit of all pledges or securities given to or in the hands of a surety of the debtor for his indemnity, whether the surety is damnified or not, and it is a trust created for the security of the debt." The proposition does not state the principle correctly that the Court and counsel sought to apply to the facts of this case.

It must be conceded that a party is bound only as he binds himself; that parties being competent to contract, can make any contract that they see proper to make, that is not prohibited by law or public policy. Standing, then, firmly upon that bottom, it must be conceded that a surety and debtor could contract in such a manner that the indemnity would run to the surety alone, to his probable loss, and not to the debt, and in no manner be considered as security for the debt. A surety is personally liable for the debt. It is, therefore, of no moment to him whether Courts give that construction to contracts made by him to secure him against the note. But such is not the case at bar. Durham was not surety for Hopkins. The indebtedness was not his; he was in no manner holden for its payment. He could have no interest in providing for its payment. His property was holden on the mortgage. He, by the written instrument, provided for an indemnity that ran to the probable loss arising from the sale of his property. The security that he took ran to his contingent, probable loss, and not to Hopkins' indebtedness. It is evident, from the instrument, that the intention of Hop-

kins and Durham was not to secure the notes or the indebtedness due on them, but to indemnify Durham on account of probable loss arising from the sale of his property. The transaction was a conditional sale, depending upon the sale of Durham's property on the mortgage. The instrument expressly states that "in case of foreclosure or sale of his (Durham's) land, then this (sale) to be absolute." The sale of Durham's land was a condition that invested him with full property in the property transferred. It was a transaction that looked to Durham's indemnity and safety alone, and in no manner was a surety for the debt. That such a contract could be made is conceded, upon principle and authority in 4 Dev. Eq., 205, 221.

The respondents, in the Court below presented the following authorities as decisive of this case: 14 S. & M. 87; 8 Alabama, 886; Story on Promissory Notes, Sec. 281; 18 Mo. 138; 9 Paige, 432; Story's Eq., Secs. 502, 638; 3 Paige, 613, 619.

An examination of those cases shows that they are not in point, and only declare a doctrine that no person denies: that if a surety receives property from the debtor, to secure the *payment of the debt* for which he is personally liable with the debtor, it is in equity considered a transaction for the benefit of the creditor. Such, however, is not this case. There was no legal or moral obligation on the part of Durham to pay the debt, in the first instance, and there is not a scintilla of evidence that even tended to show that he afterwards agreed to pay it. Counsel may contend that Durham, by reason of his property being held as security for those notes, was a surety. He seems to have quoted 3 Paige, 613, to that end. The case at bar is not analogous with 3 Paige. That case simply declared that the wife, under the facts of the case, to the extent of her property mortgaged for her husband's debt, for certain purposes was a surety, and entitled to all the rights of a surety, as against the debtor, and also as against the acts of a creditor, as far as those acts affected the legal status of the parties; but it does

not hold that the creditor could make a contract for the third party, or claim the benefit of a contract to which he was not a party, and which was in no manner made for his benefit.

*S. Rosenbaum,* for Respondent.

The principal argument of appellant is, that the transfer made to him by Hopkins, on the 9th of July, 1866, and for which he received four thousand dollars in gold the next day, was an indemnity to Durham, and not a security of the debt. Suppose we admit appellant's premises, and where does it place him? We refer the Court on this point to the following authority:

"If a surety has a counterbond or security from the principal, the creditor will be entitled to the benefit of it, and may, in equity, reach such security to satisfy his debt." (Story's Eq. Juris., Secs. 502, 638.)

"When a surety took a confession of judgment *for his indemnity* from the maker of two notes which he had undersigned, sold the property of the maker on an execution thereon, and received the proceeds in the promissory notes of the purchaser of such property:" *Held,* that he was in equity *a trustee* of the last mentioned notes for the holder of the obligations upon which he was surety. (*Clark* v. *Ely et als.,* 2 Sandford, 166.)

The same doctrine is held in all of the following cases: *Haven* v. *Foley and Papin,* 18 Mo. 132; 19 Mo. 636; *Ross* v. *Wilson et als.,* 7 S. & M., 753; 19 Alabama, 795; 8 Alabama, 798; 3 Gratt. 358; 2 Paine C. C. 569; 11 Cal. 11; Kent's Com., 4th Vol., 307.

"If either the creditor or surety, at the time he becomes bound, or at any other time before or after, takes a lien on real or personal property, the other party is entitled to the

benefit of it; so that if the surety fail, the creditor is entitled to and may enforce the lien the surety may have taken. In short, he is entitled to stand in the shoes of the other, in regard to all remedies." (2 Tucker Com. 492.)

The case of *Curtis et als.* v. *Tyler & Allen*, 9 Paige's Ch. 432, is directly in point. In that case, Murray became surety on a bond and mortgage executed by Tyler, and afterwards Allen executed a bond to Murray to secure him. The Court there held that the holder of the mortgage was entitled *to the collateral bond given to Murray by Allen, and to a decree of foreclosure against the mortgaged premises.*

A creditor is in equity entitled to the benefit of any collateral security which the debtor has given to the surety or person standing in the situation of a surety. Collateral securities, taken by a surety *for his indemnity*, are regarded as trusts for the *better security of the debt*, and Courts of equity will compel the execution of the trust. (*Vail* v. *Foster*, 4 Comstock, 312.)

The next argument used by defendant is, that Durham is not a surety. We answer that it is immaterial whether he is surety or not; if the property was given to him as *indemnity*, we are entitled to the same, even though Durham was not liable in any manner. All the above decisions were not rendered on the ground that defendant was surety, but on the ground that indemnity is " a trust *created for the better security of the debt, and attaches to it.*" (*Ohio Life Insurance Company* v. *Ledyard*, 8 Alabama, 866; see note of 9 Paige Ch. 436.)

By the Court, SAWYER, C. J.:

On the 9th of October, 1865, one Hopkins executed to Ralph Bird, five promissory notes, amounting in the aggregate to four thousand dollars, being for the purchase money of the furniture of a hotel. At the same time the defendant, Durham, who had no personal interest in the matter, to

secure the payment of said notes from Hopkins to Bird, executed in favor of Bird a mortgage upon a tract of land in Butte County.   There was no covenant in the mortgage that Durham should be personally liable for the debts secured, but, on the contrary, it was expressly provided in the mortgage, that it was " to be without personal cost or liability to the party of the first part," Durham.   In the month of July following, Hopkins, who was then insolvent, for the purpose of indemnifying and securing Durham against any loss he might sustain by reason of the execution of said mortgage for the accommodation of said Hopkins, to secure said Hopkins' notes to Bird, executed a chattel mortgage to said Durham upon certain personal property, being the same hotel property for which the notes were given, and delivered the mortgaged property to Durham.   The chattel mortgage contained a power " to rent, lease, or assign the same, as he [Durham] may deem to his best interest, to secure and indemnify himself in the premises."   Durham, afterwards, sold the personal property mortgaged to him for his indemnity, for four thousand dollars.   The plaintiff holds two of said notes, and the others are held by the defendants, other than Hopkins, who were made parties defendants, because they declined to unite as plaintiffs.   Hopkins does not appear to be a party to the suit.   The action is brought to foreclose the mortgage given by Durham to secure the notes, and to obtain an application of the proceeds of the personal property mortgaged to Durham for his own indemnity to the satisfaction of the amount found due.   The Court found the whole amount due to be five thousand five hundred and twenty dollars, said sum to bear interest at the rate of two per cent per month till paid.   The Court entered judgment as follows: Firstly—A personal judgment for the whole amount against the defendant Durham.   Secondly—The mortgaged premises are directed to be sold, and the proceeds, after paying costs, etc., applied in satisfaction of the judgment, if sufficient; if insufficient, to be applied *pro rata* on the demands of the several holders of the notes.   Thirdly

—If the mortgaged premises should not sell for enough to pay the judgment and costs, it is ordered that the deficiency be reported, and it be adjudged that the several parties holding the notes " do have and recover judgment against said defendant, Robert W. Durham, for such sums as may be due them on said judgment, in gold coin; *provided,* in case such deficiency does exceed the sum of four thousand dollars, then they recover judgment, which in the aggregate shall amount to the sum of four thousand dollars in gold coin, besides the proceeds of the sale of the land above named, and that they have judgment for the cost against said defendant, Robert W. Durham, taxed at the sum of seventy-one dollars and ninety-five cents.

The first and third branches of the judgment as above specified are clearly erroneous. The first clause, rendering a general personal judgment at law for the whole amout due, is without any foundation whatever to support it. Durham was not a party to the notes in suit in any form. He did not covenant in his mortgage to pay. On the contrary, it was expressly provided that there should be no " personal cost or liability." This personal judgment against Durham should have been omitted. The general personal judgment in the first division was, doubtless, designed to be limited by the third and last division, to the sum of four thousand dollars and costs over and above the proceeds of the mortgaged premises. But, with this limitation, the judgment is still too broad, and gives the holders of the notes more than they are entitled to as against Durham. It proceeds on the theory, that Durham received four thousand dollars for the personal property mortgaged to him for his indemnity, and, that in reality he holds said amount as trustee for the creditors without any rights of his own as against them, and that the noteholders are entitled to resort to the fund, as an additional security, with the right to exhaust both funds. That the fund is a security in the hands of Dunham, of which the noteholders are entitled to avail themselves, there can be no doubt. But the error consists in giving them both the prop-

erty which Durham mortgaged to secure the notes, and that which he received for his own indemnity. They cannot have both to the entire exclusion of Durham. There is no principle in equity or natural justice to sustain such a view. Or, if there is, no authority has been brought to our attention, which goes so far. Durham has rights as well as the plaintiff. The object of the parties in the mortgage to Durham, was to secure Durham, not the noteholders. This was a perfectly legitimate purpose, and, being so, there can be no equities attaching to the transaction in favor of the noteholders to the injury of Durham, the party intended to be primarily benefited. There is nothing immoral or unjust in Durham's taking security for his own protection against the responsibility which he assumed on behalf of Hopkins. It is just that he should be secured. The noteholders had no lien whatever on the property turned out to Durham, except so far as they are able to avail themselves of it through Durham, in consequence of his taking it for the purpose of his own indemnity. Hopkins had a right to dispose of the property to Durham or any other party, for any lawful purpose, and his creditors could not complain of any lawful disposition. There is no pretense of fraud. It was lawful for him to secure Durham, to the extent of Durham's liability on his undertaking for the accommodation of Hopkins. The payee of the notes chose to take Durham's mortgage rather than retain a lien on the property sold; at all events, he was content to do so, and there was no wrong to him in Hopkins' securing Durham. The payee was secured to his satisfaction, and it was but just and proper that Hopkins should, either then, or at some subsequent time, also secure Durham for liability incurred by him on Hopkins' behalf. The securing of Durham was no wrong or injustice to the payee of the notes, or his indorsees, and there is no possible just ground for them to avail themselves of Durham's property, which was deemed satisfactory security at the time, and, also, take the security which Durham has taken to indemnify himself for the property which he voluntarily

turned out for the security of Hopkins' notes, and which was accepted as satisfactory.

There can be no doubt, that, if a surety has a counterbond, or security from the principal, the creditor will be entitled to the benefit of it, and may, in equity, subject such security to the satisfaction of his debt, so far as it can be done without trenching upon the rights of the surety himself. The authorities cited by respondent's counsel amply sustain this proposition. (Story Eq. Jur., Secs. 502, 638; *Clark* v. *Ely*, 2 Sandf. Ch. 166; *Curtis* v. *Tyler*, 9 Paige, 432; *Haven* v. *Foley*, 18 Mo. 136; 19 Mo. 636; *Ross* v. *Wilson*, 7 S. & M. 753; *Ten Eyck* v. *Holmes*, 3 Sandf. Ch. 429.)

Thus, if Jones, for the accommodation of Smith, indorses a note for a thousand dollars to Stiles, and Smith delivers an article of property to Jones, to indemnify him against his liability on the indorsement, Stiles can, in equity, avail himself of the security for the satisfaction of the note. Jones merely seeks to indemnify himself. He is not to make profit out of his indorsement. He is personally liable to pay the whole debt, whether he receives anything from the principal or not, and it is his duty to pay it. It is also the principal's duty to pay. Jones holds property in his hands belonging to his principal expressly for his indemnity. If it is applied to the payment of the debt, both the duty of himself and his principal is discharged, and the indemnity at the same time satisfied. For if the debt is paid by the property of the principal in his hands, he himself is discharged from liability, and the object of the indemnity, as well as of the indorsement, is accomplished. So, if it is paid in part, he is indemnified to that extent, and the contract of indemnity is so far discharged. The surety is protected as well as the creditor. The duty of all parties is discharged; the creditor has got his money; everything designed by the whole transaction is accomplished, and nobody is out, or in any respect injured. Justice is done all round. If the creditor could not avail himself of the

19

security, the indorser might be insolvent and the debt lost. A Court of equity, therefore, takes hold of the matter and disposes of the case so as to do justice to all. The cases cited are all of this kind, where the party is personally liable for the whole debt. But the case in hand is entirely different. Durham is not personally liable at all. He is not a surety in any sum, except so far as the specific property, by him mortgaged, is liable. He is only liable to have that specific property appropriated and through that, and to the extent of the specific property, he is, in a secondary sense, a surety. It is not his personal duty to pay the debt, because he has never agreed to do it. He is under no obligation to seek or obtain further security for the creditor. His obligation is limited, and when the mortgaged property is sold his entire obligation to the holders of the notes is discharged. They have got all they were ever entitled to receive, so far as Durham is concerned. Durham has a right to protect himself as well as they. If he could obtain property upon which they had no lien, or in respect to which they stood in no better position than other parties to whom Hopkins was liable, it was no injury to them for him to take sufficient for his own indemnity. In this case, the judgment directs Durham's property to be sold. If, after selling his property, the Court should also take that which was given to secure him, his indemnity would be taken away, and the express and lawful agreement of the parties, made for a lawful purpose, be directly defeated rather than accomplished. The application of the funds in the hands of the surety to the payment of the debt of the principal would not, as in the case of Jones and Smith, before supposed, work a corresponding reduction of the liability of the surety. Justice would not be done to all the parties. On the contrary, while more than justice, as between the noteholders and Durham, would be meted out to the former, rank injustice would be inflicted on the latter. No case, going far enough to sustain the judgment in this particular, has been brought to our notice, and there is no sound principle upon which it can rest.

The doctrine of the cases cited, respects and protects the rights of all the parties, and works no injury to any; while the principle upon which the judgment rests, takes care of the interests of the noteholders only, and until they are satisfied ignores the right of the surety, and makes him responsible beyond his undertaking. Had the property, turned out to indemnify Durham, never been mortgaged to him, and had Durham's property been sold, he could immediately have recovered damages for his loss in an action against Hopkins, and seized and sold the same property in satisfaction of the judgment, unless the noteholders should, by greater diligence, have first secured a prior lien. Durham has only accomplished by agreement what he might have accomplished in the regular course of judicial proceedings. The holders of the notes have not yet acquired any lien or rights in the property mortgaged to Durham except so far as they have acquired them through Durham's agreement, previously and expressly made for his own benefit, and having acquired an equitable interest only, and in this mode, they must take it burdened with his equitable rights. The difference between this case and those cited consists in this: in the latter the sureties are liable personally for the whole debt. No matter how much property of the debtor's they may have, when that is exhausted the surety is still bound to pay the balance. The appropriation of the debtor's property in the hands of a surety works an indemnity to the surety in every case, as well as pays the debt. He in such case got the property as an indemnity for his personal liability, and it does, in fact, indemnify him when applied in payment of the debt for which he became liable. While in the former case the liability is limited to certain specific property, and cannot go beyond the property itself. The surety is not liable beyond it in any event. If the surety obtains other property of the debtor, expressly to indemnify himself, it does not indemnify him when it is applied in payment of the debt, unless an equal amount of his own property charged is, at the same time, released. He has a right to secure him-

self if he can, and he is not bound to procure additional security for the benefit of the creditor. To appropriate securities, which he has acquired for his own benefit, without at the same time, reducing his liability, by releasing an equal amount of his own property charged, is to deprive him of all power of self-protection, and to impose upon him obligations which he has never assumed, and which he is, in conscience, not bound to assume.

The noteholders, subject to the rights of Durham, are entitled to the benefit of the securities received by Durham. They may relinquish their claim to the Durham mortgage and appropriate the securities in the hands of Durham, for this would, in no respect, injure him; but if they appropriate the property conveyed to Durham for his indemnity, there must be a corresponding reduction in the amount, for which his property is liable. That is to say, if the four thousand dollars in the hands of Durham are appropriated to the payment of the notes, four thousand dollars of the proceeds of the sale of Durham's property must first be secured to him, and only the excess appropriated to the payment of the balance due on the notes. Or, if Durham's property be sold, then the noteholders will only be entitled to the surplus of the securities in the hands of Durham, after deducting an amount for the indemnity of Durham, equal to the amount of damages sustained by Durham, by reason of mortgaging his property, to secure the notes of Hopkins. The limit of the liability of Durham is his own property mortgaged, together with any surplus remaining in his hands from the securities received by him for his own indemnity, after fully indemnifying him for damages resulting from the mortgage of his property. And he should not be personally charged with any costs, unless he made an unsuccessful defense against the foreclosure of his own mortgage, or unless something beyond is found in his hands, subject to be applied to the payment of the notes. Nor should the mortgaged lands be charged with the costs of an unsuccessful attempt to

accomplish more than the rights of the noteholders justified under Durham's mortgage.

The Court below, having tried the case upon a different theory, with respect to the rights of Durham, the record is not in a condition to enable us to enter the proper final judgment. The judgment and order denying a new trial must be reversed and a new trial had, and it is so ordered.