## ᵇ Agnew *against* Bell.

Sureties are bound to observe good faith towards each other: and when funds are actually or potentially placed by the principal in the hands of one surety to be applied either to the payment of the debt or for the purpose of indemnifying him from any loss that may arise from the suretyship, he must be considered as holding them for the common benefit of himself and his co-sureties.

ERROR to the common pleas of *Cumberland* county.

This action was *assumpsit* by Thomas Bell against John Agnew, in which the following facts appeared:

On the 2d day of March 1832, Alexander Oliver executed a negotiable note for his own use and accommodation for 2000 dollars to Thomas Bell and John Agnew, joint payees, and thereupon the payees, Thomas Bell and John Agnew, indorsed the same note to the Lebanon Bank, and the bank, by way of accommodation or loan to Alexander Oliver, paid the amount of it to him. Before and at the time of the indorsement of the note by John Agnew, for his indemnity for so doing, he took a judgment against Alexander Oliver, which is entered of January term 1832, No. 121, for 2000 dollars, on the following agreement:

"John Agnew *v.* Alexander Oliver. Amicable action in the court of common pleas of Cumberland county.

"I, Alexander Oliver, the above named defendant, do hereby agree to appear to this amicable action and confess judgment thereon to John Agnew, the plaintiff, for the sum of 2000 dollars, with costs of suit, release of errors, and stay of execution for sixty days from this date. Witness my hand and seal, this 2d day of March, A. D. 1832.

                                "ALEXANDER OLIVER, [L. S.].

"Witnesses present—John Main, Alfred Creegh."

Alexander Oliver, by actual payments, reduced the note to the sum of 1000 dollars, and failing to make further payment, the bank, to November term 1833, brought suit against him, as also a suit against his said indorsers, and obtained judgments thereon at January term 1834: and John Agnew issued execution on his judgment, aforesaid against Alexander Oliver, levied on his real estate bound by it, and sold the same by writ returnable to August term 1834, for the sum of 825 dollars. This money being in court for appropriation, the court directed it to be paid in satisfaction, as far it would go, of the judgment of the Lebanon Bank against Thomas Bell and John Agnew. This money paid more than half of this judgment, but there remained a balance of debt, interest and the costs, amounting to the sum of 277 dollars 50 cents, for which the defendants

were liable to the bank, and now paid by plaintiff on compulsory process; and the question for decision is, whether, as between the said indorsers, John Agnew and Thomas Bell, Thomas Bell is equally entitled to the benefit of said judgment, and to the money raised by virtue of it, with John Agnew, and John Agnew liable to the right of contribution on the part of Thomas Bell for the half of the balance that remains unpaid of the judgment against them, he the said Thomas Bell having paid to said bank the whole of said balance.

The court below (Reed, president) rendered a judgment for the plaintiff.

*Williamson*, for plaintiff in error, cited, Gold *v.* Gold, 8 *Cowen* 168; Call *v.* Edwards, 2 *Bos. & Pull.* 268; 2 *Term Rep.* 105; Craythorne *v.* Swinburne, 14 *Ves.* 160; 1 *Law Lib.* 164. The defendant had a legal right with which equity will not interfere : 10 *Johns. Rep.* 523; Ex parte Rutherforth, 10 *Ves.* 410; 2 *Simmons* 155, 158.

*Carothers*, for defendant in error.

The opinion of the Court was delivered by

Kennedy, J.—It is certainly a rule too well established now to be questioned, that where any one or more of those, who are co-sureties, have had to pay, as such, the debt of their principal, or any part thereof, and he is unable to reimburse it, the loss arising therefrom must be borne equally by all of them. Hence has arisen the right to contribution. This right has been considered as depending rather upon a principle of equity than upon contract; but it may well be considered as resting alike on both for its foundation; for although, generally, there is no express agreement entered into between joint sureties, yet from the uniform and almost universal understanding which seems to pervade the whole community, that from the circumstance alone of their agreeing to be, and becoming accordingly co-sureties of the principal, they mutually become bound to each other to divide and equalize any loss that may arise therefrom to either or any of them, it may with great propriety be said that there is at least an implied contract. Deering *v.* Winchelsea, 2 *Bos. & Pull.* 270; Craythorne *v.* Swinburne, 14 *Ves.* 160. This liability between sureties to contribution, in case of loss through the inability of their principal to pay, being known to them at the time of their becoming sureties, may well be considered a great, if not the main inducement, in many instances, to their becoming such. Take for example the present case : Bell might have been unwilling to have become surety alone for Oliver for the payment of the 2000 dollars, although in conjunction with Agnew, who was good, he was willing to encounter the risk; because whatever the loss might be, he at most would only have to bear the one half of it ultimately. And in the absence of any agreement to the contrary, it necessarily follows, from the very nature of the contract, as well as the principle

[Agnew v. Bell.]

of equality which renders it equitable, that when sureties join, and more especially when they do so by the same instrument in becoming sureties, their respective responsibilities to each other for contribution must be equal, and such as will ultimately place them on the same footing with each other in regard to any loss that may be occasioned thereby.    They, to be sure, by their agreement, may regulate it otherwise, and the right to contribution may be waived. Swain *v.* Wall, 1 *Cha. Rep.* 80.   In short they have the power to modify and restrict their rights and liabilities in this respect as they please. But without an agreement made for such purpose by and between the sureties themselves, it is not in the power of the principal and one of the sureties, by any agreement made between them, to restrain and limit the right that any other of the sureties, may become entitled to claim under the general relation of being co-sureties.    Suppose for instance that Oliver, at the time of getting Agnew to indorse the note, had put property into his hands of the value of 2000 dollars for the purpose of indemnifying him ; and that Oliver, after paying 1000 dollars of the note, had become unable to pay the residue, upon which Bell paid it ; and that Agnew, after knowing this had, at the instance of Oliver, given up the property to other creditors of Oliver to satisfy their debts against him : could it be doubted that he would be liable to Bell not only for half of what the latter had paid, but for the whole amount of it.    Sureties, I apprehend, are bound to observe good faith towards each other ; and when funds are placed by the principal in the hands of one surety to be applied either to the payment of the debt, or for the purpose of indemnifying him against any loss that may arise from the suretyship, he must be considered as holding them for the common benefit of all concerned. This must be so upon the principle of equality, which places them all on the same footing, and gives to each of the other sureties an equal right with the surety himself, to whom the funds are so delivered, to participate in all the benefit to be derived therefrom.    The giving of the funds was the act of the principal, who was equally bound to indemnify all his sureties alike ; and upon him, as well as to all his means for that purpose, each of them had an equal and just claim ; so that in every point of view it seems to be unjust as well as inequitable that one surety, without the consent of his co-sureties, should obtain or derive any exclusive benefit from the act of the principal in giving up what he might and ought to have used and applied for the common benefit of all.    Seeing that co-sureties are bound to bear the loss equally which arises from the inability of their principal to pay, it is necessary to see first how it stands in this respect between the parties in the case before us.    Mr Bell has paid out of his own funds 277 dollars 50 cents, while Mr Agnew can not be said to have paid even to the amount of a cent out of his own funds.    The money raised under his judgment against Oliver, could not be said to be, nor was it in reality, the money of Agnew.   It was the money of Oliver, placed by him, as it were, in the hands of Agnew for

IV.——E

[Agnew v. Bell.]

the purpose of paying the debt for which he was a co-surety with Bell. Agnew had no right to appropriate it to any other use, and it would have been a great breach of good faith, as well as of trust, in him to have done so.   Mr *Theobald,* in his treatise on the law of Principal and Surety (267), lays it down that " both at law and in equity, if a surety, who seeks contribution, has been reimbursed part of his payment, whether by the debtor, a *counter security,* or from *any source,* he must deduct the sum reimbursed, and is entitled to contribution only on the balance ;" which is certainly in exact accordance with the principle of equality which sustains and regulates this right.   And as the great object of contribution is to equalize the loss, it can make no difference that the surety of whom contribution is sought was enabled to pay one half, or even more of the debt out of money raised from a *counter security* or some *other source* coming from the principal. Having paid nothing out of his own pocket he can not be said to have lost any thing ; nor yet to have contributed in the least to the relief of his co-surety who has lost.   Now in this case it is obvious that Mr Bell is the only loser on account of the suretyship for Mr Oliver, and that his loss amounts to 277 dollars 50 cents ; and as Mr Oliver is altogether unable to reimburse him, the whole loss must rest on his shoulders, unless Mr Agnew be bound to contribute his equal proportion as a co-surety.   This we conceive he is bound both by law and equity to do.

Judgment affirmed.