# GIBSON *v.* SHEHAN.

PRINCIPAL DEBTOR AND SURETIES; BONDS; CONTRIBUTION.

Where a principal debtor furnishes one of his three sureties with an indemnity bond, and the fund created by the bond is subsequently applied to discharge the debt for which the principal debtor and all three of the sureties are liable, the surety so secured has no right of contribution against his co-sureties; and therefore an attempted assignment by him to the surety on the indemnity bond of his rights against his two co-sureties is a nullity.

No. 383. Submitted January 11, 1895. Decided March 4, 1895.

HEARING on an appeal by the complainants from a decree sustaining a demurrer to and dismissing a bill by the assignee of a surety for contribution from co-sureties. *Affirmed.*

The COURT in its opinion stated the case as follows:

This case is presented on bill and demurrer. The court below sustained the demurrer and dismissed the bill, and the complainants have appealed; and the only question here is, do the facts alleged present a case entitling the complainants to relief?

This bill was filed by George Gibson, of the District of Columbia, and the American Surety Company, of New York, who are the appellants, against George A. Shehan and Edwin McLeod, the appellees. It is alleged that a certain Anton Karl, having been appointed by the Secretary of the Interior Department special disbursing agent of the United States Geological Survey, was required to give bond in the sum of $20,000 for the faithful performance of his duties as such disbursing agent; that he gave such bond on the 26th of June, 1889, with three sureties therein, namely, George A. Shehan, Edwin McLeod, and George Gibson; and that such

bond was duly accepted and approved on behalf of the United States.

It is alleged that Gibson, one of the sureties in the bond, and one of the complainants in this case, after the bond was given to and accepted by the United States, required of Karl full indemnity against possible loss and damage by reason of his suretyship, and that, on the 12th of August, 1889, Karl, as principal, executed a bond of indemnity to Gibson in the sum of $20,000, with the complainant, the American Surety Company, as his surety—the said Karl then and there paying the American Surety Company one per cent. on the penal sum of the bond as the consideration or premium for becoming such surety. This bond of indemnity is exhibited with the bill, and after the recitals therein, the condition is as follows:

"Now therefore, the condition of this obligation is such, that if the above bounden Anton Karl shall well and truly save harmless and indemnify the said George Gibson from all loss, damages, cost, charges and expenses, by reason of his suretyship upon the said bond, according to the true intent and meaning thereof, then this obligation to be void; otherwise to remain in full force and effect."

It is alleged that Karl made default as disbursing agent, and thereby forfeited his bond, and that the United States brought suit on the bond, and in January, 1894, recovered judgment thereon against Karl, the principal, and his three sureties before named, for the sum of $3,444.73; that upon this judgment an execution was issued and levied upon the goods and chattels of Gibson, one of the sureties; that as required by the condition of the bond of indemnity, and upon demand of Gibson, the American Surety Company paid the amount of the execution in full, with all interest and costs, amounting to the sum of $4,033.37; and the property levied upon by the marshal of the District of Columbia was thereupon discharged, and the execution was duly returned as fully paid and satisfied.

It is further alleged, that Gibson assigned to the American Surety Company all his right as co-surety to have just contribution from his co-sureties; and the bill prays for a decree against the defendants adjudging them to pay to the American Surety Company two-thirds of the said sum of $4,033.37, this latter sum being the amount paid by that company to save Gibson harmless, according to the condition of the bond of indemnity.

*Mr. A. G. Riddle* and *Mr. Montgomery Blair* for appellant, cited:

*Crawthorpe* v. *Swinborne*, 14 Ves. 160; *Ins. Co.* v. *Trans. Co.*, 117 U. S. 312; *Comegys* v. *Vasse*, 1 Pet. 193; *The Monticello* v. *Mollison*, 17 How. 152; *Garrison* v. *Ins. Co.*, 19 How. 312; *Hall* v. *Railroad Co.*, 13 U. S. 367; *The Potomac* v. *Cannon*, 105 U. S. 630; *Railroad Co.* v. *Jurey*, 111 U. S. 584.

*Mr. James G. Payne, Mr. W. L. Cole,* and *Mr. C. H. Armes* for appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

Without noticing other questions raised by the demurrer to the bill, upon the facts alleged, the question presented by the prayer for relief would seem to be a plain and simple one; and that is, whether the American Surety Company is entitled to occupy the position of co-surety with the two defendants, Shehan and McLeod, by virtue of the alleged assignment from Gibson, or otherwise? In other words, whether there be any ground shown for the claim made by the American Surety Company for contribution from the two defendants as sureties of Karl? If Gibson had no claim for contribution as against his two co-sureties for Karl, it is very clear that the American Surety Company can have none, as the latter company can only claim the rights that Gibson had to contribution.

The bond of indemnity furnished to Gibson was the bond of Karl, the principal debtor in the bond to the United States,

and the American Surety Company became surety thereon at the instance and by the procurement of Karl, for a premium paid by him for becoming such surety. The bond of indemnity was for the full amount of the official bond executed to the United States by Karl and his sureties; and while this bond of indemnity was given to Gibson by Karl as one of the sureties on the official bond, it constituted a fund for the protection and indemnity of all three of the sureties on the official bond of Karl; Gibson receiving the bond as a trust fund placed in his hands by the principal debtor with which to discharge the principal debt that might be demandable and recovered by the United States, and as well for the relief of his co-sureties as for the relief of himself.

The principle is perfectly well settled, both in the English and in the American courts of equity, that a surety is bound to bring into hotchpot for the benefit of his co-sureties a security given him by the principal debtor, although he only consented to become surety upon having such security given him, and although the other sureties were not consulted and not even aware of his having taken such security. *Steel* v. *Dixon*, 17 Ch. D. 825 ; *Berridge* v. *Berridge*, 44 Ch. D. 168.

In the note of Hare and Wallace to the leading case of *Dering* v. *Earl of Winchelsea* (1 Eq. Lead. Cas., 3d Am. Ed., pp. 162 and 163) there is a full collection of the American cases, and the doctrine upon this subject is very fully and clearly stated by the learned annotators. It is there laid down as a settled principle of equity, that if one of several co-sureties subsequently take a security from the principal, *for his own indemnity*, it inures to the common benefit of all the sureties. If, therefore, the principal convey property, by a deed of trust, expressly for the benefit of one of the sureties only, the others have an equity to come upon it to the same extent that he can. And again, quoting from the case of *Agnew* v. *Bell*, 4 Watts, 31, 33, it is said, that " when funds are placed by the principal in the hands of one surety, to be applied either to the payment of the debt, or for the purpose of indemnifying him against any loss that may arise from

the suretyship, he must be considered as holding them for the common benefit of all concerned. The giving of the funds was the act of the principal, who was equally bound to indemnify all his sureties alike, and upon him, as well as to all his means for that purpose, each of them had an equal and just claim. It is unjust and inequitable that one surety, without the consent of his co-sureties, should derive any exclusive benefit from the act of the principal in giving up what he might and ought to have applied for the common benefit of all." And in conclusion of the discussion of this particular principle, the editors say: "If the principal has given sureties to one surety, the latter cannot in chancery recover contribution from his co-sureties, without accounting for the property, and either showing how much he received upon it, and making a ratable allowance of the proceeds, or showing that he could not by reasonable diligence realize from it. Any loss which may arise from his neglect or misconduct will be a defense to the extent of such loss. The surety receiving securities is a trustee for his co-sureties, and is bound to such discreet and reasonable use of them as would be required from a trustee, but no greater."

But, irrespective of other authority, the question here involved would seem to be fully embraced and concluded by the decision of the Supreme Court of the United States, in the case of *Hampton* v. *Phipps*, 108 U. S. 260, 264. The facts of that case were quite different from those of the present case, but the principles involved, and applied in the decision of that case, were substantially the same as those involved in this case. That was a case of a bill in equity by a creditor to obtain the benefit of securities held by sureties of the principal debtor; and it involved the question of the rights of all the sureties to the fund. And in deciding the case the court said: "When a debtor, who has given personal guaranties for the performance of his obligation, has further secured it by a pledge in the hands of his creditor, or an indemnity in those of his surety, it is conformable to the presumed intent of all the parties to the arrangement,

that the fund so appropriated shall be administered as a trust for all the purposes which a payment of the debt will accomplish; and a court of equity accordingly will give to it this effect.   All this, it is to be observed, as the rule verbally requires, presupposes that the fund specifically pledged and sought to be primarily applied, is the property of the debtor, primarily liable for the payment of the debt; and it is because it is so, that equity impresses upon it the trust, which requires that it shall be appropriated to the satisfaction of the creditor, the exoneration of the surety, and the discharge of the debtor.   The implication is, that a pledge made expressly to one is in trust for another, because the relation between the parties is such that that construction of the transaction best effectuates the express purpose for which it was made."

In this case, as we have seen, the bond of indemnity was furnished by Karl, the principal debtor.   It was held by Gibson, one of the sureties, and the fund created by the bond was applied, as equity required it to be applied, to the extent necessary to pay off and discharge the debt for which Karl and all three of the sureties were liable.   This was in accordance with the trust impressed upon this indemnity fund by the well established principles of equity; and Gibson, not having to pay the debt, had no right of contribution as against the other sureties, and therefore had nothing to assign to the American Surety Company. This latter company did not stand in the relation of co-surety with the defendants; and neither Gibson nor the Surety Company had any right of contribution as against the defendants.

It is unnecessary to refer to any other question, as to the sufficiency of the allegations of the bill, raised by the demurrer; and it follows from what we have said, that the decree below, sustaining the demurrer and dismissing the bill, must be affirmed; and it is so ordered.

*Decree affirmed, with costs to appellees.*